**Reversed and Rendered and Opinion filed July 9, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00574-CV

---

**WELLS FARGO BANK, N.A. FKA WELLS FARGO BANK MINNESOTA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., COMMERCIAL PASS THROUGH CERTIFICATES, SERIES 2003-PMI, ACTING THROUGH SERVICER ORIX CAPITAL MARKETS, LLC, Appellant**

**V.**

**MICHAEL B. SMUCK AND EDWIN A. WHITE, Appellees**

---

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2010-71304**

---

## OPINION

Appellant, Wells Fargo Bank, N.A. FKA Wells Fargo Bank Minnesota, N.A., as Trustee for the Registered Holders of J.P. Morgan Chase Commercial

Mortgage Securities Corp., Commercial Pass Through Certificates, Series 2003-PMI, acting through service Orix Capital Markets LLC ("Wells Fargo"), appeals a take-nothing judgment in favor of appellees, Michael B. Smuck and Edwin A. White, in Wells Fargo's suit to recover under a Non-Recourse Indemnification Agreement. We reverse the trial court's judgment and render judgment in favor of Wells Fargo against appellees, jointly and severally, for $10,068,453.49.

## I. BACKGROUND

MBS-The Falls, Ltd. ("MBS-The Falls") was formed as a "special purpose entity" to borrow funds to acquire an apartment complex named "The Falls." Another company, 9001 S. Normandale, L.L.C. ("Normandale"), was formed to act as general partner of MBS-The Falls. Smuck is the managing member of Normandale, and White's company, Ed White & Associates, LLC, is a member.

MBS-The Falls executed a promissory note ("the Note") for $9 million in favor of the lender and a deed of trust and security agreement pledging the real, and other personal, property as collateral. By assignment, Wells Fargo eventually became holder of these loan documents. The nature of the loan was non-recourse financing. Specifically, the Note included a provision limiting MBS-The Falls's liability to the property pledged as collateral, unless one of the "Non-Recourse Exceptions" listed therein was satisfied. Two of the Non-Recourse Exceptions, items (a) and (b), are relevant in the present case. The provision containing the Non-Recourse Exceptions states, in pertinent part,

> 12. Exculpation. Subject to the provisions of this Section, Borrower's liability under this Note, the Security Instrument or the Other Security Documents shall only extend to the Mortgaged Property and other collateral given to secure the Debt, and Lender shall not enforce such liability against any other asset, property or funds of Borrower or any person or entity constituting Borrower; provided, however, the

2

foregoing shall not: (a) impair the right of Lender to bring suit and obtain personal, recourse judgment against any person or entity (including Borrower or any person or entity constituting Borrower) relating to any losses sustained by Lender in connection with any fraud, intentional misrepresentation, waste, or misappropriation of tenant security deposits or rents collected more than one (1) month in advance by Borrower; (b) impair the right of Lender to name, and obtain a judgment against any person or entity (including Borrower or any person or entity constituting Borrower) to the extent required by law to either obtain a judgment of specific performance with respect to any of the provisions of this Note, the Security Instrument or any of the Other Security Documents (other than any requirement contained therein to pay the Debt), or to foreclose the Security Instrument and obtain title to the Mortgaged Property and other collateral given to secure the Debt ; . . . [(c)-(f)—defined circumstances inapplicable in the present case]. Items (a) through (f) above are collectively the "Non-Recourse Exceptions". Borrower's liability under the Non-Recourse Exceptions . . . shall be limited to the amount of any losses or damages sustained by Lender in connection with such Non-Recourse Exceptions. . . .

Thus, in the event of a default, including a deficiency on the balance owed after foreclosure, MBS-The Falls's liability was limited to the lender's rights under the Non-Recourse Exceptions.

As a condition for making the loan, the lender required appellees to individually sign a "NON-RECOURSE INDEMNIFICATION AGREEMENT" ("the Indemnification Agreement"), contemporaneously with execution of the note. Both appellees are defined as "Indemnitor," and Wells Fargo's assignor is defined as "Lender," under the Indemnification Agreement. The pertinent provision of the Indemnification Agreement states,

> 2. Indemnity. INDEMNITOR HEREBY ASSUMES LIABILITY FOR AND AGREES TO PAY, PROTECT, INDEMNIFY, DEFEND AND HOLD HARMLESS LENDER (AND ANY ASSIGNEE OR PURCHASER OF ALL OR ANY INTEREST

3

IN THE NOTE AND THE SECURITY INSTRUMENT) FROM AND AGAINST ANY AND ALL LIABILITIES, OBLIGATIONS, LOSSES, DAMAGES, COSTS AND EXPENSES (INCLUDING ATTORNEYS' FEES), CAUSES OF ACTION, SUITS, CLAIMS, DEMANDS AND JUDGMENTS WHICH AT ANY TIME MAY BE IMPOSED UPON, INCURRED BY OR AWARDED AGAINST LENDER AND FOR WHICH BORROWER AT ANY TIME MAY BE PERSONALLY LIABLE PURSUANT TO THE NON-RECOURSE EXCEPTIONS (AS DEFINED IN PARAGRAPH 12 OF THE NOTE). EACH PERSON OR PARTY EXECUTING THIS INDEMNITY AGREES THAT THE LIABILITY HEREUNDER SHALL BE JOINT AND SEVERAL.

As we will discuss, central to the present case is Wells Fargo's contention that appellees assumed liability under the Indemnification Agreement for any liability of MBS-The Falls under the Non-Recourse Exceptions.[1]

MBS-The Falls defaulted on the Note, and Wells Fargo foreclosed on the property.[2] Wells Fargo filed suit in Tarrant County, Texas against MBS-The Falls, Normandale, and appellees. Wells Fargo sought damages from MBS-The Falls and Normandale under Non-Recourse Exceptions (a) and (b), alleging they committed waste and permitted liens to be filed on the property, thereby impairing the value of the collateral and Wells Fargo's rights relative to foreclosure. Wells Fargo pleaded claims against appellees under the Indemnification Agreement.

Wells Fargo obtained an interlocutory summary judgment ("the Tarrant County Judgment") on its claims against MBS-The Falls and Normandale for $8,985,142.86, pre-judgment interest of $1,051,972.41, post-judgment interest, and

---

[1] This transaction was one of many transactions, for various different properties, involving the same non-recourse financing arrangement, whereby an "MBS" entity executed the note and appellees executed the indemnification agreement.

[2] For ease of reference, we will refer to Wells Fargo throughout the remainder of this opinion as though it were the original lender.

attorney's fees of $31,338.22. The Tarrant County Judgment became final when Wells Fargo non-suited, without prejudice, its claims against appellees in that suit.

Wells Fargo then filed the present case in Harris County seeking recovery from appellees under the Indemnification Agreement for the Tarrant County Judgment against MBS-The Falls. The trial court conducted a bench trial. Among other evidence, Wells Fargo offered the Note, the Indemnification Agreement, its petition in the Tarrant County case, and the interlocutory and final judgments in the Tarrant County case. On May 10, 2012, the trial court signed a final judgment ordering that Wells Fargo take nothing on its claims against appellees. The trial court subsequently made written findings of fact and conclusions of law.

## II. ANALYSIS

In its sole issue, Wells Fargo contends it conclusively proved appellees' liability under the Indemnification Agreement by presenting the Tarrant County Judgment which established MBS-The Falls's liability under the Non-Recourse Exceptions.

Appellees have filed separate briefs and present distinct arguments. Smuck's sole argument is that the Indemnification Agreement is applicable only when MBS-The Falls is liable to Wells Fargo under the Non-Recourse Exceptions for a third-party's claims against Wells Fargo—not when MBS-The Falls is liable under the Non-Recourse Exceptions for Wells Fargo's own losses. In contrast, White seems to acknowledge appellees are liable under the Indemnification Agreement for any liability of MBS-The Falls under the Non-Recourse Exceptions. However, White argues (1) the Tarrant County Judgment awarded the deficiency owed under the Note after the foreclosure and was not based on the Non-Recourse Exceptions, and (2) Wells Fargo failed to establish in the present case any

5

circumstances, such as waste, triggering MBS-The Falls's liability under the Non-Recourse Exceptions.

## A.    Smuck's Interpretation of the Indemnification Agreement

We will first address Smuck's argument because determining the extent of appellees' liability under the Indemnification Agreement is preliminary to evaluating whether Wells Fargo proved that liability.  In construing a contract, we must ascertain the true intentions of the parties as expressed in the writing itself. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011).  We must examine and consider the entire writing in an effort to harmonize and give effect to all provisions so that none will be rendered meaningless. *Id.*  We begin this analysis with the contract's express language. *Id.* If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous, and we will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *see Italian Cowboy*, 341 S.W.3d at 333.

According to Smuck, Wells Fargo incorrectly characterizes the Indemnification Agreement as appellees' guaranty of any liability of MBS-The Falls under the Non-Recourse Exceptions.  Smuck contends the term "indemnity" or "indemnification" generally refers to an agreement to hold the indemnitee harmless against claims brought against the indemnitee by a third party. Therefore, Smuck contends the Indemnification Agreement is applicable only when some third party has a claim against Wells Fargo in connection with the Non-Recourse Exceptions—not when Wells Fargo sustains its own losses in

connection with the Non-Recourse Exceptions, as awarded in the Tarrant County Judgment.[3] We reject Smuck's contention.[4]

We apply the above-cited rules of contract construction and consider the nature of the obligation to which the parties agreed and not merely the name of the agreement. *See Wells Fargo Bank, N.A. v. MBS-Hills, Ltd.*, No. 02-10-00289-CV, 2011 WL 6141619, at *3 (Tex. App.—Fort Worth Dec. 8, 2011, no pet.) (mem. op.) (citing *Wood v. Canfield Paper Co.*, 5 S.W.2d 748, 750 (Tex. 1928)). Smuck's interpretation does not comport with the express language of the Indemnification Agreement, which is broader than urged by Smuck. Under the provision, appellees did agree to indemnify Wells Fargo for claims by a third-party against Wells Fargo in connection with the Non-Recourse Exceptions. However, the provision also clearly encompasses any of Wells Fargo's own "losses, damages, costs and expenses" in connection with the Non-Recourse Exceptions:

> INDEMNITOR HEREBY **ASSUMES LIABILITY FOR AND AGREES TO PAY**, PROTECT, INDEMNIFY, DEFEND AND HOLD HARMLESS [Wells Fargo] . . . FROM AND AGAINST **ANY AND ALL** . . . **LOSSES, DAMAGES, COSTS AND EXPENSES** . . . WHICH AT ANY TIME MAY BE . . . **INCURRED BY** . . . **[Wells Fargo]** AND FOR WHICH [MBS-The Falls] AT ANY TIME MAY BE PERSONALLY LIABLE PURSUANT TO THE NON-RECOURSE EXCEPTIONS . . . .

---

[3] Smuck is the only appellee who advances this contention. As discussed below, Smuck is also the only appellee who unequivocally admits the Tarrant County Judgment was based on the Non-Recourse Exceptions.

[4] Smuck incorrectly suggests the trial court adopted his interpretation of the Indemnification Agreement. The trial court's findings and conclusions demonstrate it determined appellees are liable for any liability of MBS-The Falls under the Non-Recourse Exceptions but Wells Fargo failed to prove the latter. Nonetheless, we address Smuck's argument because "[w]e must uphold a correct lower court judgment on any legal theory before it, even if the court gives an incorrect reason for its judgment." *Guar. Cnty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986) (per curiam); *In re Wells*, 252 S.W.3d 439, 446 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding).

(emphasis added).

Consequently, contrary to Smuck's contention, the Indemnification Agreement is essentially a guaranty. A "guaranty" is "an undertaking by one person to be answerable for the payment of some debt or the performance of some contract or duty by another person, who himself remains liable." *Wood*, 5 S.W.2d at 749; *see* Black's Law Dictionary 773 (9th ed. 2009). The Indemnification Agreement functions as appellees' guaranty of all MBS-The Falls's liability under the Non-Recourse Exceptions—whether MBS-The Falls is liable for Wells Fargo's own losses or liable for third-party claims against Wells Fargo.

Moreover, Smuck's proposed construction does not comport with the purpose sought to be achieved via the non-recourse financing. We construe contracts "from a utilitarian standpoint bearing in mind the particular business activity sought to be served" and "will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive." *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). It is difficult to readily conceive of a situation in which a third-party would assert a claim against Wells Fargo (as MBS-The Falls's lender) in connection with the Non-Recourse Exceptions at issue in this case; i.e., for MBS-The Falls's causing waste of the property or impairment of Wells Fargo's right to foreclose. Instead, it is Wells Fargo who would experience a loss due to such conditions. Wells Fargo forewent any right to sue for the balance due on the note and was limited to the collateral in the event of MBS-The Falls's default. Waste or impairment of Wells Fargo's right to foreclose could preclude Wells Fargo from realizing the full value of the property at a foreclosure sale or force Wells Fargo to alleviate these conditions before it could realize the full value. Therefore, Wells Fargo clearly intended to

protect the value of its collateral and ability to foreclose by retaining the right to recourse against MBS-The Falls (and "any . . . entity constituting [MBS-The Falls]") under certain circumstances.

However, both MBS-The Falls and Normandale (the "entity constituting [MBS-The Falls]") are limited liability entities. Further, as mentioned above, MBS-The Falls is a special purpose entity, meaning it was formed solely to borrow funds to purchase the property. Accordingly, as recited in the Indemnification Agreement, Wells Fargo required appellees to execute the agreement as a condition for the loan; and appellees agreed because "[t]he extension of the Loan to [MBS-The Falls] is a substantial benefit to [appellees] . . . ." Therefore, Wells Fargo clearly intended to preserve some viable recourse (against appellees) in the event MBS-The Falls's actions within the Non-Recourse Exceptions impaired Wells Fargo's ability to realize full value of the property upon default and foreclosure. It would be unreasonable to conclude Wells Fargo ensured MBS-The Falls's liability for all Wells Fargo's losses in connection with the Non-Recourse Exceptions yet Wells Fargo obtained appellees' guaranty only when those losses involve third-party claims against Wells Fargo.

In *MBS-Hills*, 2011 WL 6141619, one of the other cases involving the same parties and financing arrangement, for a different apartment complex, the court rejected Smuck's interpretation of the Indemnification Agreement. *See id.* at *3–5. The court analyzed the extent of appellees' liability under the Indemnification Agreement for Wells Fargo's claim that the borrower/"MBS" entity committed waste and impaired Wells Fargo's right to foreclose. *See id.* at *1–5. Applying established principles of contract construction, the court construed the Indemnification Agreement in accordance with the particular business activity

9

sought to be served—non-recourse commercial financing. *See id.* at *3–5. Consistent with our reasoning, the court recognized that, because the borrower and Normandale are limited liability entities, Wells Fargo intended to retain recourse against appellees if the borrower's liability under the Non-Recourse Exceptions was triggered. *See id.* at *4. Therefore, the court held Wells Fargo has full recourse against the borrower and, in turn, appellees for "the amount of any losses or damages sustained by [Wells Fargo] *in connection with such **Non–Recourse Exceptions***" (such as damages for waste), but not for the entire amount due and owing under the note. *See id.* at *4–5 (emphasis in original).

Contrary to Smuck's position, the court did not state the Indemnification Agreement applies only to a third-party's claims against Wells Fargo and is not a guaranty of all the borrower's obligations under the Non-Recourse Exceptions. *See id.* at *3–5. Rather, the court held appellees did not guarantee all of the borrower's obligations under **the Note**—such as the full amount due and owing on the debt. *See id.* at *4–5. However, the court effectively held the Indemnification Agreement is a guaranty of all the borrower's liability under the Non-Recourse Exceptions, which would include Wells Fargo's own losses in connection with the Non-Recourse Exceptions. *See id.*; *see also White v. JPMC 2004-C3 Trails Apartments LLC*, No. 02-12-00164-CV, 2012 WL 6632776, at *2–3 (Tex. App.— Fort Worth Dec. 21, 2012, no pet.) (mem. op.) (relative to same financing arrangement, for different property, affirming judgment holding appellees liable for losses incurred by lender's assignee due to "MBS" entity's committing waste on property; and construing Indemnification Agreement as providing, "if MBS did not make good on any obligation for which it was liable under recourse provisions of the note and deed of trust, [White] would make good on them"); *White v. MLMT 2004-BPC1 Carlyle Crossing, LLC*, No. 02-10-00233-CV, 2011 WL 3672022, at

10

*6 (Tex. App.—Fort Worth Aug. 18, 2011, pet. denied) (mem. op.) (same and expressly referring to Indemnification Agreement as a "guarantee").

In summary, we conclude appellees are liable under the Indemnification Agreement for any liability of MBS-The Falls under the Non-Recourse Exceptions.

## B. Proof Required to Establish Appellees' Liability under the Indemnification Agreement

Next, we turn to Wells Fargo's arguments regarding the proof required in the present case to establish MBS-The Falls is liable under the Non-Recourse Exceptions and thus appellees are liable under the Indemnification Agreement. In this regard, Wells Fargo challenges several of the trial court's findings of fact and conclusions of law:

FINDINGS OF FACT

5. Neither the Interlocutory Summary Judgment nor final judgment against [MBS-The Falls] and [Normandale] in the previous lawsuit makes mention of the non-recourse exceptions provided in section 12 of [the Note].

6. Under the loan documents that are the basis for this law suit, [appellees] may only be held liable to [Wells Fargo] under the specific and defined situations listed in section 12 of [the Note].

7. [Wells Fargo] has not proven that these specific and defined situations exist. [Wells Fargo] has failed to provide any evidence that these exceptions have been met.

CONCLUSIONS OF LAW

1. [Wells Fargo] failed to prove waste, or any other non-recourse exception sufficient to trigger [appellees'] liability under Section 12 of [the Note].

2.    [Wells Fargo] also failed to provide sufficient evidence at trial that the losses it sustained fall within these non-recourse exceptions.

3.    Accordingly, under the Non-Recourse Indemnification Agreement, [appellees] should not be held liable to [Wells Fargo].

Wells Fargo suggests Findings Nos. 6 and 7 are actually legal conclusions regarding interpretation of the Note and the Indemnification Agreement and these conclusions, as well as Conclusions Nos. 1, 2, and 3, are erroneous. Wells Fargo suggests these findings and conclusions indicate the trial court incorrectly determined Wells Fargo was required to establish a Non-Recourse Exception against MBS-The Falls in the present case; i.e., establish MBS-The Falls committed waste or impaired Wells Fargo's right to foreclose. It is undisputed Wells Fargo did not offer evidence in the present case to establish a Non-Recourse Exception. However, Wells Fargo argues it was required to prove only that MBS-The Falls has already been found liable under a Non-Recourse Exception. According to Wells Fargo, it satisfied that burden by proving the Tarrant County Judgment against MBS-The Falls was based on two Non-Recourse Exceptions. Thus, Wells Fargo asserts Finding No. 5 is immaterial because it was unnecessary for the Tarrant County Judgment to mention a Non-Recourse Exception.

If read in isolation, Findings No. 6 and 7 and Conclusions No. 1, 2, and 3 indicate the trial court concluded Wells Fargo was required to establish a Non-Recourse Exception in the present case. However, such a conclusion would conflict with Finding No. 5; that finding indicates the trial court determined proof Wells Fargo obtained a judgment against MBS-The Falls under a Non-Recourse Exception would be sufficient to trigger appellees' liability under the Indemnification Agreement but Wells Fargo failed to offer such proof. When a trial court's findings appear to conflict, they will be reconciled whenever possible.

12

*Zieba v. Martin*, 928 S.W.2d 782, 791 (Tex. App.—Houston [14th Dist.] 1996, no writ). Reconciling the above-cited findings and conclusions, the trial court apparently determined Wells Fargo was required to (1) prove it had obtained a judgment against MBS-The Falls based on a Non-Recourse Exception, or (2) absent such judgment, establish a Non-Recourse Exception in the present case. The trial court apparently further determined Wells Fargo did not satisfy either option, hence the court's general Conclusion No. 3: "under the Indemnification Agreement, [appellees] should not be held liable to [Wells Fargo]."

Nevertheless, to the extent the trial court's findings and conclusions are conflicting and it determined Wells Fargo was required to establish a Non-Recourse Exception in the present case, we disagree. As discussed below, Wells Fargo proved the Tarrant County summary judgment was based on two Non-Recourse Exceptions. Axiomatically, a summary judgment for a plaintiff constitutes a judgment on the merits of a claim. *See* Tex. R. Civ. P. 166a(c); *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986) and stating a plaintiff moving for summary judgment must conclusively prove all essential elements of its claim). Therefore, a summary judgment against MBS-The Falls based on two Non-Recourse Exceptions demonstrates MBS-The Falls has been held liable under the Non-Recourse Exceptions.

As Wells Fargo asserts, requiring it to establish a Non-Recourse Exception in the present case would amount to allowing an impermissible, collateral attack on the Tarrant County Judgment. Only a void judgment may be collaterally attacked. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Undisputedly, the Tarrant County Judgment is not void. A collateral attack is "an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of

13

correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Id.* A trial on the merits of a Non-Recourse Exception in the present case could result in a fact-finder (1) determining MBS-The Falls did not commit waste or impair Wells Fargo's right to foreclose, inconsistent with the Tarrant County judgment, or (2) awarding a different amount of damages than the Tarrant County judgment. In such situations, appellees would effectively avoid liability under the Indemnification Agreement for some or all of the Tarrant County judgment by attacking the merits of the judgment.

Finally, our conclusion is consistent with *MBS-The Hills.* That court held Wells Fargo failed to prove appellees' liability under Indemnification Agreement because (1) the summary judgment against the borrower and Normandale awarded damages representing the deficiency owed on the note—not damages in connection with the Non-Recourse Exceptions; and (2) Wells Fargo did not otherwise offer evidence of such damages. 2011 WL 6141619, at \*5–6. Therefore, the court implicitly recognized, consistent with our conclusion, a judgment against the borrower under a Non-Recourse Exception would be sufficient to trigger appellees' liablility under the Indemnification Agreement. *See id.*

## C.    Proof Wells Fargo Obtained Judgment against MBS-The Falls under Non-Recourse Exceptions.

Wells Fargo essentially presents a challenge to legal sufficiency of the evidence supporting the trial court's judgment in the present case by contending Wells Fargo conclusively proved the Tarrant County Judgment was based on Non-Recourse Exceptions. When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168

S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id.* When, as in the present case, a party attacks legal sufficiency relative to an adverse finding on which it had the burden of proof, it must demonstrate the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The fact finder is the sole judge of witness credibility and the weight to give their testimony. *City of Keller*, 168 S.W.3d at 819.

The trial court found neither the Tarrant County interlocutory summary judgment nor the order non-suiting appellees and rendering the summary judgment final "makes mention of" the Non-Recourse Exceptions. We agree with Wells Fargo that it was not necessary for either order to expressly state the summary judgment represented recovery based on a Non-Recourse Exception. In the interlocutory summary judgment, the Tarrant County court ordered that Wells Fargo "recover on its **claims** against [MBS-The Falls] and [Normandale] . . . ." (emphasis added). Wells Fargo's petition in the Tarrant County suit demonstrates the only "**claims**" pleaded against MBS-The Falls were for damages in connection with the Non-Recourse Exceptions. The following is the entire section of the petition in which Wells Fargo set forth its claims against MBS-The Falls:

### Defendants' Liability

19. The obligations of MBS-Falls, Normandale, Smuck, and White under the Note and Guaranty are generally non-recourse, unless certain exceptions to the non-recourse nature of the obligations exist. In this case, the following exceptions apply and the Defendants are

personally liable for the losses, damages and expenses incurred by Plaintiffs pursuant to Sections 12(a) and 12(b) of the Note and Section 2 of the Guaranty:

    (a)    Waste, as described below.

    (b)    Impairment of Plaintiffs' right to foreclose on the Property, as described below.

## Waste

20.    Upon information and belief, MBS-Falls and Normandale took unreasonable actions and unreasonably failed to act in their management of the Property.

21.    Pursuant to the Note, MBS-Falls and Normandale are jointly and severally liable for the loss, damage and expenses incurred by Plaintiffs as a result of such actions. Likewise, pursuant to the Guaranty, Smuck and White are jointly and severally liable for the loss, damage and expenses incurred by Plaintiffs as a result of such actions.

## Impairment of Right to Foreclose

22.    MBS-Falls expressly agreed that impairing the right of Plaintiffs to foreclose on the Deed of Trust and obtain title to the Property would be excepted from the otherwise non-recourse nature of the Note:

[Item 12(b) of Non-Recourse Exceptions]

23.    Several liens remain on the Property even after the foreclosure, encumbering the title obtained by Plaintiffs in and through the foreclosure sale. The liens remaining on the Property total $72,570.28, exclusive of any accrued interest.

24.    MBS-Falls and its general partner Normandale are jointly and severally liable under the Note for any losses and damages arising from MBS-Falls's failure to clear the liens that have impaired

Plaintiffs' rights to foreclose on the Property. Smuck and White are jointly and severally liable under the Guaranty for any losses and damages arising from MBS-Falls's failure to clear the liens that have impaired Plaintiffs' rights to foreclose on the Property.

Accordingly, the Tarrant County court did express the summary judgment was based on the Non-Recourse Exceptions by ordering Wells Fargo recover on its "claims."

At trial of the present case, appellees did not present any evidence refuting the Tarrant County suit was based solely on the Non-Recourse Exceptions. On appeal, White makes a blanket assertion the summary judgment was "nothing more than a deficiency judgment" against MBS-The Falls and Normandale for "the principal remaining on the Promissory Note, prejudgment interest and post-judgment interest." However, White either cites no record references or cites a non-existent portion of the record to support his assertions. As factual background in the Tarrant County petition, Wells Fargo stated there remained a deficiency after the foreclosure. However, Wells Fargo asserted no claim for the deficiency.

We recognize the Tarrant County petition was entitled "PLAINTIFFS' SUPPLEMENTAL PETITION." However, the supplemental petition reads as an amended original petition, rather than a supplemental petition. An original petition or amended original petition (if necessary to add to, or withdraw, matters in the original petition) is the pleading in which a party alleges its claims, whereas a supplemental petition is used to respond to an allegation in the opponent's most recent pleading. *See* Tex. R. Civ. P. 62, 64; *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 53–54 (Tex. 2003). In the "supplemental" petition, Wells Fargo recited it had previously filed an "Original Petition and Agreed Application for Appointment of Receiver and Temporary Restraining Order," pursuant to which a

17

receiver was appointed and the property foreclosed upon. It is clear Wells Fargo then filed the "supplemental" petition to (1) add claims under the Non-Recourse Exceptions against MBS-The Falls and Normandale, who were already defendants, and (2) add appellees as defendants for claims under the Indemnification Agreement (which were eventually non-suited and re-asserted in the present case). In the "supplemental" petition, Wells Fargo pleaded an entire cause of action, including identity of the parties, jurisdiction and venue, claims, and a prayer, as a party would do in an original or amended petition.

There is no indication in our record that any Tarrant County defendant specially excepted to the misnomer and/or the petition was stricken. Thus, despite the misnomer, the "supplemental" petition constituted an operative petition for purposes of pleading claims against MBS-The Falls under the Non-Recourse Exceptions. *See Sibley*, 111 S.W.3d at 54–55 ("[T]hough a pleading may be denominated a supplement it may actually constitute an amendment or set up a counter-claim or cross-action, and, if not excepted to but allowed to stay in the case until judgment, may be considered for all that it means instead of what it is called.").

Because the "supplemental" petition actually constituted an amended petition, it arguably superseded the original petition. *See* Tex. R. Civ. P. 65; *Wren v. Tex. Emp't Comm'n*, 915 S.W.2d 506, 508 (Tex. App.—Houston [14th Dist.] 1995, no writ). On the other hand, by using the term "supplemental," Wells Fargo arguably did not supersede its original petition. In the present case, Wells Fargo did not introduce the original petition to expressly negate it included a claim for the deficiency after foreclosure. Regardless, Wells Fargo recited in the "supplemental" petition that the original petition was filed **before** the foreclosure;

18

this recital is the only evidence regarding the date of those events. Accordingly, even if the original petition technically remained viable after filing of the "supplemental" petition, the original petition could not have included a claim for a deficiency because there was not yet any deficiency. Alternatively, to the extent Wells Fargo might have asserted a claim for the deficiency in the original petition, Wells Fargo superseded that claim in the "supplemental" petition by expressly conceding its only avenue for recovery was via the Non-Recourse Exceptions. At trial of the present case, appellees did not offer the original or any other petition in the Tarrant County suit to show Wells Fargo pleaded any claims other than those based on the Non-Recourse Exceptions.

Moreover, the interlocutory summary judgment does not support White's contention. The Tarrant County court did not recite that the recovery represented the principal remaining on the Note. Rather, the court ordered that Wells Fargo recover "the principal amount of $8,985,142.86, prejudgment interest . . . postjudgment interest." This language reflects the court used the term "principal" to mean the principal amount of the judgment, i.e., the damages, as opposed to interest, and not to mean the principal remaining on the Note.

White also asserts in his brief,

> In the interest of expediency and cost-saving, Appellant took a judgment against two unrepresented corporate defendants. The motion for this judgment lacked the level of proof to support a finding of waste and therefore the Trial Court found in favor of Appellees. Appellant now asks this Court to enforce an unchallenged and insufficient judgment against White.

White again cites no record references to support his assertion, and the motion for summary judgment was not introduced at trial of the present case.

19

Regardless, even if the non-movant fails to respond, the movant must establish entitlement to traditional summary judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). If Wells Fargo failed to meet that burden relative to its claims under the Non-Recourse Exceptions, MBS-The Falls could have appropriately raised such complaint in an appeal of the summary judgment. White's raising that complaint in the present case constitutes an impermissible collateral attack on the judgment. *See Browning*, 165 S.W.3d at 346. Therefore, the summary judgment constitutes a judgment on the merits of MBS-The Falls's liability under the Non-Recourse Exceptions even if the motion was unopposed or not supported by sufficient evidence. As discussed above, in return for the "substantial benefit" to appellees from the loan to MBS-The Falls, appellees guaranteed MBS-The Falls's liability under the Non-Recourse Exceptions, with no limitation on how that liability might be established. Therefore, appellees agreed to the possibility they would be held liable under the Indemnification Agreement if MBS-The Falls failed to oppose or challenge a judgment against it under the Non-Recourse Exceptions.

White also cites *MBS-The Hills* to support his position that the Tarrant County Judgment merely represented a deficiency judgment. However, *MBS-The Hills* is distinguishable on this issue because that court held the record clearly demonstrated judgment was rendered against the borrower and Normandale for the deficiency on the note after the foreclosure sale—not damages in connection with a Non-Recourse Exception. *See* 2011 WL 6141619, at *5–6. Thus, Wells Fargo did not prevail on its claims against appellees under the Indemnification Agreement, although the court agreed appellees would have been liable for Wells Fargo's damages in connection with the Non-Recourse Exceptions. *See id.*

Conversely, in the present case, Wells Fargo offered uncontroverted evidence it obtained judgment against MBS-The Falls under the Non-Recourse Exceptions.

Finally, we point out that Smuck (but not White) unequivocally admits in his appellate brief the Tarrant County Judgment "was for waste damages caused Wells Fargo by [MBS-The Falls]." We have discretion to accept a statement made in a brief as a judicial admission. *See Jansen v. Fitzpatrick*, 14 S.W.3d 426, 431 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Bowles v. Wade*, 913 S.W.2d 644, 649 (Tex. App.—Dallas 1995, writ denied)).[5] Irrespective of this admission, we have concluded Wells Fargo proved the Tarrant County Judgment was based on the Non-Recourse Exceptions. However, this admission alone would support imposing liability against Smuck under the Indemnification Agreement.

## III. CONCLUSION

Wells Fargo established MBS-The Falls is liable for $10,068,453.49 under the Non-Recourse Exceptions via the Tarrant County judgment. Accordingly, Wells Fargo is entitled to recover that amount from appellees under the Indemnification Agreement. We sustain Wells Fargo's sole issue. We reverse the

---

[5] Additionally, at trial of the present case, Wells Fargo offered both appellees' responses to requests for admission. Smuck (but not White) admitted the following: (1) "[Wells Fargo] sued [MBS-The Falls] to establish its liability under the non-recourse exceptions provided for by the Note attached as Exhibit 2;" and (2) "[MBS-The Falls's] liability under the non-recourse exceptions provided for by the Note was established by the summary judgment attached as Exhibit 3." The referenced Exhibits were not attached to the responses presented at trial. However, it is undisputed MBS-The Falls was a "special purpose" entity formed to secure financing for The Falls, thus indicating there was only one note executed by MBS-The Falls. It also appears undisputed the Tarrant County judgment is the only summary judgment against MBS-The Falls. Regardless, we need not rely on Smuck's responses because of our analysis regarding the basis for the Tarrant County judgment and Smuck's admission in his brief. However, we note the responses as presumably explaining why Smuck admitted the same fact on appeal and instead argues this fact does not entitle Wells Fargo to judgment under a legal interpretation of the Indemnification Agreement.

trial court's judgment and render judgment that Wells Fargo recover $10,068,453.49 from appellees, jointly and severally.


/s/    John Donovan
          Justice


Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.

22