

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-10-00289-CV

WELLS FARGO BANK, N.A. F/K/A
WELLS FARGO BANK MINNESOTA,
N.A., AS TRUSTEE FOR THE
REGISTERED HOLDERS OF J.P.
MORGAN CHASE COMMERCIAL
MORTGAGE SECURITIES CORP.,
COMMERCIAL MORTGAGES PASS-
THROUGH CERTIFICATES, SERIES
2003-PMI, ACTING BY AND THROUGH
ORIX CAPITAL MARKETS, LLC

APPELLANT

V.

MBS - THE HILLS, LTD., 3101 W.
NORMANDALE, L.L.C., MICHAEL B.
SMUCK, AND EDWIN A. WHITE

APPELLEES

----------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## DISSENTING MEMORANDUM OPINION
## ON EN BANC CONSIDERATION[1]

----------

[1]See Tex. R. App. P. 47.4.

I continue to respectfully dissent from the majority's holding that the agreement between Wells Fargo and Smuck and White is not a guaranty and that Smuck and White are not liable for the judgment against MBS - The Hills and Normandale (the Borrowers). I withdraw the prior dissenting memorandum opinion issued December 8, 2011, and substitute the following.

## I. The indemnity agreement functions as a guaranty.

As the majority explains, MBS - The Hills is a limited partnership, and its general partner Normandale is a limited liability company. Wells Fargo required Smuck and White to sign the indemnification agreement so that it would have an avenue to recoup its investment should the nonrecourse exceptions be triggered.[2] Indeed, the indemnification agreement states, "As a condition to making the Loan, Lender has required that Indemnitor indemnify Lender with respect to the matters set forth herein." When we construe the agreement, we are required to bear that intention in mind. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument.").

When the exceptions were triggered, the Borrowers became liable under the note for "the amount of any losses or damages sustained by [Wells Fargo] in

---

[2]The majority opinion recognizes the intent of the parties by stating, "Wells Fargo's predecessor-in-interest had Smuck and White sign the nonrecourse indemnification agreement, seeking indemnification from Smuck and White if the nonrecourse exceptions under the note were triggered." Maj. Op. at 9.

connection with" the exceptions. When the Borrowers became liable under the note, Smuck and White became liable under the indemnity agreement. The agreement, although styled as an indemnity agreement, essentially "functioned as a guarantee that if [MBS - The Hills] did not make good on any obligation for which it was liable under recourse provisions of the note . . . , [Smuck and White] would make good on them." *White v. MLMT 2004-BCP1 Carlyle Crossing, LLC*, No. 02-10-00233-CV, 2011 WL 3672022, at *6 (Tex. App.—Fort Worth Aug. 18, 2011, pet. denied) (mem. op.) (construing a nearly identical indemnity agreement);[3] *see also Farmers & Merchs. State Bank of Krum*, 79 S.W.3d 615, 617 (Tex. App.—Eastland 2002, pet. denied) ("A 'guaranty' is a species of indemnity contract. It is a promise to stand responsible for occurrence of an event that may not be directly within the control of the immediate parties to the contract.") (quoting *Bohart v. Universal Metals & Machinery, Inc.*, 523 S.W.2d 279, 288–90 (Tex. Civ. App.—Dallas 1975) (Guittard, J., dissenting), *rev'd*, 539 S.W.2d 874 (Tex. 1976)).

Paragraph 2 of the agreement states, in whole,

> 2. <u>Indemnity</u>. INDEMNITOR HEREBY ASSUMES LIABILITY
> FOR AND AGREES TO PAY, PROTECT, INDEMNIFY, DEFEND

---

[3]As discussed *infra*, the majority distinguishes the facts of this case from those of *MLMT*. I cite *MLMT* here for the proposition that the indemnity agreement in that case "functioned as a guarantee," precisely as the agreement functions in this case. I believe the majority's holding that this agreement does not function as a guarantee directly conflicts with our construction of the almost identical agreement in *MLMT* regardless of the distinctions upon which the majority relies.

AND HOLD HARMLESS LENDER . . . FROM AND AGAINST ANY AND ALL LIABILITIES, OBLIGATIONS, LOSSES, DAMAGES, COSTS AND EXPENSES (INCLUDING ATTORNEYS' FEES), CAUSES OF ACTION, SUITS, CLAIMS, DEMANDS AND JUDGMENTS WHICH AT ANY TIME MAY BE IMPOSED UPON, INCURRED BY OR AWARDED AGAINST LENDER AND FOR WHICH BORROWER AT ANY TIME MAY BE PERSONALLY LIABLE PURSUANT TO THE NON-RECOURSE EXCEPTIONS (AS DEFINED IN PARAGRAPH 12 OF THE NOTE). EACH PERSON OR PARTY EXECUTING THIS INDEMNITY AGREES THAT THE LIABILITY HEREUNDER SHALL BE JOINT AND SEVERAL.

Smuck argues that the language "judgments which at any time may be imposed upon, incurred by or awarded against Lender and for which Borrower at any time may be personally liable" requires Smuck and White to assume liability only for obligations for which Wells Fargo would be liable to a third party based on MBS - The Hills's violation of the nonrecourse exceptions. This is far too narrow a reading and makes little sense in light of the reason why Wells Fargo required the agreement. *See Coker*, 650 S.W.2d at 393 (noting that to achieve the objective of ascertaining the parties' intentions, "courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless"). Paragraph 2 protects against much more than just claims against Wells Fargo for the Borrowers' actions. It also offers coverage for "any and all liabilities, obligations, losses, damages, costs and expenses . . . incurred by . . . Lender" as the result of the nonrecourse exceptions, which was the case here.

While an indemnity agreement protects against actions by third parties, *Nat'l City Mortg. Co. v. Adams*, 310 S.W.3d 139, 144 (Tex. App.—Fort Worth

4

2010, no pet.) (noting that an indemnity contract "obligates the indemnitor to protect the indemnitee against liability claims of persons not a party to the agreement") (internal quotation mark omitted) (quoting *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 821 S.W.2d 359, 362–63 (Tex. App.—Waco 1991), *aff'd in part and reversed in part* 853 S.W.2d 505, 508 (Tex. 1993)), the agreement between Smuck and White and Wells Fargo protects against more than that. Further, it is clear from the language of the agreement that the parties intended the agreement not to stand alone like a traditional indemnity agreement but to be "collateral and secondary to the principal contract that is guaranteed in the secondary contract" like a guaranty. *Joseph Thomas, Inc. v. Graham*, 842 S.W.2d 343, 346 (Tex. App.—Tyler 1992, no writ).

The trial court agreed with Smuck's argument. In its findings of fact, the trial court stated, "[O]n July 16, 2003, [Smuck and White] executed a *Non-Recourse Indemnification Agreement* with [Wells Fargo] in which they agreed to indemnify [Wells Fargo] against certain claims that might be brought by third-parties." Further, the court found that "[t]he indemnification agreement does not operate as a guaranty of *any* obligation of the defendant business entities, which were not party to the agreement." [Emphasis added.] Thus, the trial court's judgment in favor of Smuck and White is based on the finding that they agreed only to indemnify the noteholder against third-party claims.

It is that exact finding that Wells Fargo challenges in its first issue on appeal. In affirming the trial court's judgment, the majority opinion implicitly holds

5

this finding to be in error. Yet the majority also holds that the indemnity agreement in question "gives Wells Fargo recourse against Smuck and White for 'the amount of any losses or damages sustained by the lender *in connection with such Non-Recourse Exceptions.*'" Maj. Op. at 11. This is contrary to the trial court's finding and assumedly to the reason for the trial court's denial of Wells Fargo's claim against Smuck and White. The majority ultimately holds that with proper evidence, Smuck and White would be personally liable for waste damages pursuant to the nonrecourse exceptions. Nevertheless, the majority overrules Wells Fargo's first issue and, contrary to its own reasoning, holds "that the evidence supports the trial court's 'finding' that the nonrecourse indemnification agreement did not operate as a guaranty of any obligation of MBS - The Hills and Normandale." Maj. Op. at 12. I agree with the recent decision out of our sister court, construing an identical indemnity clause in a contract between Wells Fargo and another MBS special entity and referencing this court's now-withdrawn opinion in this case, that the majority's reasoning here "effectively held [that] the Indemnification Agreement is a guaranty of all the borrower's liability under the Non-Recourse Exceptions, which would include Wells Fargo's own losses in connection with the Non-Recourse Exceptions." *Wells Fargo Bank, N.A. v. Smuck*, No. 14-12-00574-CV, 2013 WL 3422888, at *4–5 (Tex. App.—Houston [14th Dist.] July 9, 2013, no pet. h.) ("The Indemnification Agreement functions as appellees' [i.e., Smuck and White's] guaranty of all MBS - The Falls's liability under the Non-Recourse Exceptions.").

6

The contract should be construed as functioning as a guaranty of payment if the nonrecourse exceptions were violated. *See White*, 2011 WL 3672022, at *6. I would sustain Well Fargo's first issue.

**II. Wells Fargo is not required to re-prove its damages because its interlocutory summary judgment against the Borrowers is not before us.**

The majority cites to the Fourteenth Court of Appeals opinion in *Smuck* as support for its position, but the *Smuck* court went to such pains to distinguish its practically identical facts from the facts of this case in order to reach what it considered to be the correct decision—a decision opposite to that of the majority's in this case. *Smuck* noted that Wells Fargo could only have gotten a summary judgment against MBS - The Falls based on the non-recourse exceptions because that is the only cause on which summary judgment is sought. 2013 WL 3422888, at *8 ("[I]t was not necessary for either order to expressly state the summary judgment represented recovery based on a Non-Recourse Exception. . . . Wells Fargo's petition in the Tarrant County suit demonstrates the only '**claims**' pleaded against MBS - The Falls were for damages in connection with the Non-Recourse Exceptions."). Such is the case here. *Smuck* noted that although the interlocutory summary judgment in the case awarded an amount equal to the balance of the note, the damages were for violations of the non-recourse exceptions. Id. at *11. Such is the case here. *Smuck* also held that "requiring [Wells Fargo] to establish a Non-Recourse Exception in the present case would amount to allowing an impermissible,

7

collateral attack on the" interlocutory summary judgment, which had not been challenged. *Id.* at *7, 10 ("If Wells Fargo failed to meet [its evidentiary] burden relative to its claims under the Non-Recourse Exceptions, MBS - The Falls could have appropriately raised such complaint in an appeal of the summary judgment. White's raising that complaint in the present case constitutes an impermissible collateral attack on the judgment."). Such, too, is the case here.

At trial, Wells Fargo entered into evidence the promissory note, the nonrecourse indemnification agreement, a summary of its damages (showing damages of $6,575,686.72), and an affidavit of Bruce Woodward, the appointed receiver, in which he described the waste that had occurred to the property. Wells Fargo also introduced the requests for admissions it had served on the Borrowers and to which they had failed to respond. As a result, the following requests were deemed admitted:

> **REQUEST FOR ADMISSION NO. 3:**
> Admit that [MBS - The Hills] took unreasonable actions and unreasonably failed to act in its management of the Property.
>
> **REQUEST FOR ADMISSION NO. 4:**
> Admit that Normandale took unreasonable actions and unreasonably failed to act in its management of the Property.
>
> **REQUEST FOR ADMISSION NO. 5:**
> Admit that [MBS - The Hills] committed waste with respect to the Property.
>
> **REQUEST FOR ADMISSION NO. 6:**
> Admit that Normandale committed waste with respect to the Property.
>
> . . . .

8

**REQUEST FOR ADMISSION NO. 13:**

Admit that under the Note, [MBS - The Hills] agreed that impairing the rights of [Wells Fargo] to foreclose on the Deed of Trust and obtain title to the Property would be excepted from the otherwise non-recourse nature of the Note.

**REQUEST FOR ADMISSION NO. 14:**

Admit that liens remained on the Property after the foreclosure sale of the Property.

. . . .

**REQUEST FOR ADMISSION NO. 16:**

Admit that allowing the liens to remain on the Property triggered full recourse liability for [MBS - The Hills].

**REQUEST FOR ADMISSION NO. 17:**

Admit that commission of waste on the Property triggered full recourse liability for [MBS - The Hills].

**REQUEST FOR ADMISSION NO. 18:**

Admit that [MBS - The Hills] and Normandale are jointly and severally liable under the Note for all losses and damages resulting from waste committed on the Property.

. . . .

**REQUEST FOR ADMISSION NO. 20:**

Admit that [MBS - The Hills] and Normandale are jointly and severally liable under the Note for all losses and damages from [MBS - The Hills]'s failure to clear the liens that impaired [Wells Fargo]'s right to foreclose on the Property.

The deemed admissions establish that the nonrecourse exceptions had been violated. *See Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 838 (Tex. App.—Dallas 2009, no pet.) ("Deemed admissions may be employed as proof, and once admissions are deemed admitted by operation of law and where the admissions fully support each element of a cause of action, including damages,

9

they will fully support a judgment based thereon.").[4]  Wells Fargo provided competent summary judgment evidence in the form of deemed admissions proving that the Borrowers committed waste on the property and that liens remain on the property, both of which triggered the Borrowers' personal liability under the nonrecourse exceptions.  This evidence, as well as Woodward's affidavit testifying to the waste he witnessed and the summary of the damages, was admitted at the final hearing regarding Smuck and White's liability as evidence of violations of the nonrecourse exceptions.

The Borrowers' liability under the nonrecourse exceptions was limited to "the amount of any losses or damages sustained by Lender in connection with such Non-Recourse Exceptions."  However, the Borrowers were deemed to have admitted that they were liable for the full balance of the note.  In its motion for summary judgment, Wells Fargo argued in essence that its damages resulting from the Borrowers' violations of the nonrecourse exceptions equaled the balance of the note.  The Borrowers did not file a response to the motion or

---

[4]The majority argues that the admissions are "inaccurate" and "unilaterally modify the terms of a bargained-for agreement."  Maj. Op. at 10–11.  I, however, continue to maintain that the merits of the interlocutory summary judgment are not before us, and thus am bound to accept the trial court's findings based on these admissions.  *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 627 (Tex. 1996) (holding that appellate courts should consider all summary judgment grounds the trial court rules on and *that the movant preserves for appellate review*); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.,* 300 S.W.3d 348, 373 (Tex. App.—Dallas 2009, pet. denied) (refusing on appeal to disregard affidavit because motion at trial to disregard affidavit under sham affidavit doctrine was denied and not appealed).

10

otherwise argue that they were liable for any lesser amount. The trial court granted summary judgment against the Borrowers and awarded Wells Fargo the full $5,904,537.61 that it sought. This order was not appealed and remains to this day unchallenged—except by the majority's opinion.

The trial court's order set the amount of damages in connection with the violation of the nonrecourse exceptions as a matter of law. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (noting that a movant meets the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law). The trial court specifically found in the Additional Findings of Fact and Conclusions of Law that the Borrowers are jointly and severally liable through the nonrecourse liability exceptions. The trial court obviously understood that Wells Fargo was not seeking, nor entitled to, a deficiency judgment but was entitled to recover only under the defined nonrecourse exceptions.[5]

In its motion, Wells Fargo argues that it is entitled to the balance of the note because the Borrowers' commission of waste and allowance of liens to

---

[5]Even Smuck recognizes that the trial court's judgment was not a deficiency judgment but instead "[t]he Interlocutory Judgment against [MBS - The Hills] was for waste damages caused [to] Wells Fargo by [MBS - The Hills] . . . ." White is the only party to this litigation who argues that the interlocutory summary judgment order granted a deficiency judgment. He states that the trial court's summary judgment order did not specify that waste had occurred. His argument is defeated however by the trial court's specific finding of October 20, 2010 that "[the Borrowers] are jointly and severally liable under the Note by reason of and through the non-recourse liability exceptions . . . ." The trial court was explicit, and simply calling it a deficiency judgment does not make it so.

11

remain on the property triggered full recourse liability. It moved for summary judgment on no other ground. The majority states that Wells Fargo "relie[d] upon waste or foreclosure impairment to justify recovering the balance due on the note." Maj. Op. at 14. But Wells Fargo noted in its motion for summary judgment,

> Although Wells Fargo meets the elements for recovery under a promissory note . . . , the obligations of [the Borrowers] are generally non-recourse unless certain exceptions exist. Exceptions do exist, and [the Borrowers] are jointly and severally liable for the losses, damages and expenses incurred by Wells Fargo pursuant to Sections 12(a) and 12(b) of the Note for:
>
> (a) Waste; and
>
> (b) Impairment of [Wells Fargo's] right to foreclose on the Property.

A court cannot grant summary judgment on grounds not presented in the motion. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011); *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010). The amount of the damages award, regardless of whether it equaled the balance of the note, could only be damages for Wells Fargo's cause of action against the Borrowers for their violation of the nonrecourse exceptions as proven by the deemed admissions.

Paragraph 12 of the promissory note states, "Borrower's liability under the Non-Recourse Exceptions . . . shall be limited to the amount of any losses or damages sustained by Lender in connection with such Non-Recourse Exceptions." What amount Wells Fargo lost "in connection" with the Borrowers'

12

waste was a question determined in the interlocutory summary judgment proceedings. If the majority's complaint is about the adequacy of the evidence to support the amount of damages Wells Fargo incurred in connection with the nonrecourse exceptions, I note that the summary judgment order that allegedly incorrectly found the evidence sufficient is not before us.[6] The only issues presented for our review involve that part of the final judgment of July 15, 2010, regarding the claims against Smuck and White. It is immaterial to the issue of Smuck and White's liability that the award against the Borrowers equaled the balance on the note. The majority's holding requires us to essentially retry Wells Fargo's case against the Borrowers, despite no party appealing the first judgment. *See Smuck*, 2013 WL 3422888, at *10 ("[T]he summary judgment constitutes a judgment on the merits of MBS - The Falls's liability under the Non-Recourse Exceptions even if the motion was unopposed or not supported by sufficient evidence.").

The majority's opinion only references the deemed admissions concerning liability for "the full principal amount due on the Note." As set forth above in full in

---

[6]The majority distinguishes this case from previous cases from our court involving Smuck and White, reasoning that in those previous cases, the lender provided evidence of waste. *See White v. JPMC 2004-C3 Trails Apartments LLC*, No. 02-12-00164-CV, 2012 WL 6632776, at *1 (Tex. App.—Fort Worth Dec. 21, 2012, no pet.) (mem. op.); *MLMT*, 2011 WL 3672022, at *1. In neither of those cases, however, did the lender already have a judgment setting the amount of losses incurred from the non-recourse exceptions.

this dissent, there are requests which were also deemed admitted that MBS - The Hills and Normandale were jointly and severally liable under the note for all losses and damages resulting from waste committed on the property and from MBS - The Hills's failure to clear the liens that impaired Wells Fargo's right to foreclose. The trial court found the Borrowers liable under the note based solely on the nonrecourse liability exceptions.

In affirming the trial court, the majority on rehearing also rejects the trial court's finding that the $5,904,537.61 was the appropriate amount of damages for violations of the nonrecourse exceptions. The only issue in this appeal is the extent of Smuck and White's liability under the indemnity agreement—not the amount of damages flowing from that liability. The majority opines that the trial court erred in finding that the $5,904,537.61 was the appropriate amount of damages for the recourse liability under the note. I respectfully disagree. This court, in this appeal, should not revisit an order and a finding that was not appealed and which set the amount of damages as a matter of law. The amount of the summary judgment award has not been challenged, and we are not to examine whether it was a correct or fair amount. If Wells Fargo was awarded more than it should have been, that is the risk the guarantors took when they agreed to guaranty another's obligation. Smuck and White agreed to pay for the damages Wells Fargo suffered as a result of the nonrecourse exceptions, and they are liable for the amount that was awarded. *See id.* ("[I]n return for the 'substantial benefit' to appellees from the loan to MBS - The Falls, appellees

guaranteed MBS - The Falls's liability under the Non-Recourse Exceptions, with no limitation on how that liability might be established. Therefore, appellees agreed to the possibility they would be held liable under the Indemnification Agreement if MBS - The Falls failed to oppose or challenge a judgment against it under the Non-Recourse Exceptions.").

The interlocutory summary judgment was not based on the Borrowers' failure to pay the note; it was based on the Borrowers' waste and failure to clear the liens on the property. The indemnification agreement makes the indemnitors' liability co-extensive with that of the Borrowers' personal liability under the nonrecourse exceptions. The Borrowers were found to have violated the nonrecourse exceptions, triggering their personal liability. Because the indemnity agreement functions as a guaranty, I would hold Smuck and White liable to Wells Fargo for the unchallenged damages award and bring the outcome of this case in line with the similar cases out of this court and others.


LEE GABRIEL
JUSTICE

DELIVERED: August 8, 2013

15