# Claudia Jenks

| | |
|---|---|
| **From:** | Jeff Kyle |
| **Sent:** | June 02, 2017 8:50 AM |
| **To:** | Blake Hawthorne |
| **Cc:** | Claudia Jenks |
| **Subject:** | 15-744-CV Corrected Opinion and Judgment (17-0365) |
| **Attachments:** | 15-744-CV COVER LETTER_FILECOPY.pdf; 2017-06-01_CV15-744.mem.pdf; 2017-06-01 _J744cv15.pdf |

**Importance:** High

Blake,

These are copies of the corrected opinion and Judgment issued by the third Court.  A petition for review is currently pending, 17-0365.  Please let me know if you have any questions.

Best regards,

Jeff

**Jeffrey D. Kyle**
**Clerk, Third Court of Appeals**
**P.O. Box 12547**
**Austin, TX 78711**
**Phone:** █████████
**Fax:  512-463-1685**

# COURT OF APPEALS
## FOR THE
## THIRD DISTRICT OF TEXAS
P.O. Box 12547, Austin, Texas 78711-2547
(512) 463-1733

Date:   June 2, 2017

Case Number: 03-15-00744-CV
Trial Court No.: D-1-GN-15-003093

Style:    The Chambers-Liberty Counties Navigation District;
      Terry Haltom, in his Individual Capacity as District Commissioner;
      Allen Herrington, in his Individual Capacity as District Commissioner;
      Ken Coleman, in his Individual Capacity as District Commissioner;
      Ken Mitchell, in his Individual Capacity as District Commissioner; and
      Dave Wilcox, in his Individual Capacity as District Commissioner v.
      The State of Texas

---

The following corrections were made to the opinion and the judgment dated July 8, 2016, in the above referenced cause number:

On page one, in the style, lines six and seven of the opinion and the judgment, "**Commissioner; and Sustainable Texas Oyster Resource Management, L.L.C., Appellants**" was changed to "**Commissioner, Appellants**".

On page one, paragraph one, line three of the opinion, "**Commissioners); and Sustainable Texas Oyster Resource Management, L.L.C. (STORM) appeal the**" was changed to "**Commissioners) appeal the**".

On page one, paragraph one, line six of the opinion, "**STORM**" was changed to "**Sustainable Texas Oyster Resource Management, L.L.C. (STORM)**".

The enclosed corrected opinion and judgment pages were sent this date to the following persons:

The Honorable Craig T. Enoch
Enoch Kever PLLC
600 Congress, Suite 2800
Austin, TX 78701
* DELIVERED VIA E-MAIL *

The Honorable Velva L. Price
Civil District Clerk
Travis County Courthouse
P. O. Box 1748
Austin, TX 78767
* DELIVERED VIA E-MAIL *

FILE COPY

The Honorable Billy Ray Stubblefield
Administrative Judge
Williamson County Courthouse
405 Martin Luther King, Box 2
Georgetown, TX  78626
* DELIVERED VIA E-MAIL *

Mr. Lambeth Townsend
Lloyd, Gosselink, Rochelle & Townsend, PC
816 Congress Avenue, Suite 1900
Austin, TX  78701
* DELIVERED VIA E-MAIL *

The Honorable Rhonda Hurley
District Judge, 98th District Court
P. O. 1748
Austin, TX  78767
* DELIVERED VIA E-MAIL *

Mr. Craig J. Pritzlaff
Environmental Protection Division
P. O. Box 12548 (MC-066)
Austin, TX  78711-2548
* DELIVERED VIA E-MAIL *

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00744-CV

**The Chambers-Liberty Counties Navigation District;
Terry Haltom, in his Individual Capacity as District Commissioner;
Allen Herrington, in his Individual Capacity as District Commissioner;
Ken Coleman, in his Individual Capacity as District Commissioner;
Ken Mitchell, in his Individual Capacity as District Commissioner; and
Dave Wilcox, in his Individual Capacity as District Commissioner, Appellants**

v.

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. D-1-GN-15-003093, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Chambers-Liberty Counties Navigation District (the District); and District Commissioners Terry Haltom, Allen Herrington, Ken Coleman, Ken Mitchell, and Dave Wilcox (the Commissioners) appeal the trial court's order denying their plea to the jurisdiction and Rule 91a motion to dismiss. The State of Texas, acting on behalf of the Texas Parks and Wildlife Department (the Department), sued appellants alleging that the District and its Commissioners had unlawfully authorized Sustainable Texas Oyster Resource Management, L.L.C. (STORM) to cultivate and harvest oysters in state waters. For the reasons that follow, we affirm the trial court's order in part and reverse and dismiss in part.

**BACKGROUND**

The District is a political subdivision of the State created in 1944 pursuant to Article XVI, Section 59 of the Texas Constitution (subsequently converted to a self-liquidating district) and organized pursuant to Chapters 60, 62, and 63, in part, of the Texas Water Code.[1] *See* Tex. Const. art. XVI, § 59 (declaring development of navigation in inland and coastal waters of State to be public purpose and authorizing creation of conservation and reclamation districts); *see generally* Tex. Water Code §§ 60.001 .564 (general provisions concerning navigation districts), 62.001 .318 (governing navigation districts formed under article XVI, section 59); 63.001 .379 (governing self-liquidating navigation districts). In 1957 and 1967, the State conveyed to the District by patent more than 23,000 acres of submerged land in Galveston and Trinity Bays (the Submerged Lands). In April 2014, the Commissioners authorized the District to enter into a lease with STORM (the Lease) covering a portion of the Submerged Lands and granting STORM rights "to use, create, manage, possess, cultivate or control oyster beds, to seed, plant, transplant, sow, cultivate, depurate or harvest oysters lawfully and commercially" and "to promote commercial fishing." The Lease granted STORM the right "to protect the Land, each oyster bed . . . and the oysters . . . against trespass and trespassers," and the lease required STORM, and STORM agreed, to comply with all applicable laws.

---

[1] Self-liquidating districts are those organized under article XVI, section 59 and chapter 62 of the Water Code that "may be made self-supporting and return the construction cost of the district within a reasonable period by tolls, rents, fees, assessments, or other charges other than taxation." Tex. Water Code § 63.021(a).

The District supported STORM in its effort to obtain a permit from the Army Corps of Engineers to construct oyster beds, and STORM sent "No Trespass Notices" to holders of leases, known as "certificates of location," issued by the Department. In August 2015, on behalf of the Department, the State sued the District, its Commissioners in their official capacities, and STORM, alleging that, in leasing the Submerged Lands to STORM, the District and its Commissioners had exceeded their legal authority, and that the District had unlawfully asserted sole and exclusive control and possession over all oysters within the waters and upon the Submerged Lands described in the Lease. The State sought declarations under the Uniform Declaratory Judgments Act that (1) the District and/or its Commissioners were without legal authority and had acted ultra vires in entering the Lease, and (2) the Lease is void. *See* Tex. Civ. Prac. & Rem. Code § 38.001 .011. The State also sought "restitution" for the value of each oyster or other fish unlawfully killed, caught, taken, possessed, or injured. *See* Tex. Parks & Wildlife Code §§ 12.301 (providing that person who kills, catches, takes, possesses, or injures any fish is liable to state for value of each fish), .303 (providing that attorney general may bring suit to enforce section 12.301). The District and the Commissioners filed a plea to the jurisdiction and a motion to dismiss under Rule 91a. The plea and the motion asserted the same jurisdictional arguments. After a non-evidentiary hearing, the district court denied both the plea to the jurisdiction and the Rule 91a motion.

**STANDARD OF REVIEW**

As a political subdivision of the state, the District is immune from suit unless the legislature has expressly waived immunity. *See Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012); *College of Mainland v. Glover*, 436 S.W.3d 384, 391 (Tex.

3

App. Houston [14th Dist.] 2014, pet. denied). Because sovereign immunity deprives a trial court of subject matter jurisdiction, it is properly asserted in a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 26 (Tex. 2004). A plea questioning the trial court's subject matter jurisdiction raises a question of law that we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). When, as here, a plea to the jurisdiction challenges the pleadings, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true to determine if the pleader has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009); *Miranda*, 133 S.W.3d at 226. When the pleadings do not allege sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate an incurable jurisdictional defect, the issue is one of pleading sufficiency, and the plaintiff should be given an opportunity to amend. *Miranda*, 133 S.W.3d at 226 27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

Rule 91a provides that a party may move to dismiss a cause of action on the ground that it has no basis in law or fact. Tex. R. Civ. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* The court may not consider evidence when ruling on a Rule 91a motion; instead, the ruling must be based only on the pleading of the cause of action and any supporting exhibits. *Id.* R. 91a.6. We review a trial court's ruling on a motion to dismiss

4

de novo. *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App. Houston [14th Dist.] 2014, pet. denied); *see GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App. Beaumont 2014, pet. denied). We base our review on the allegations of the live petition and any attachments, and we accept as true the factual allegations. *Wooley*, 447 S.W.3d at 76.[2]

The parties' issues also require us to construe applicable statutes and rules. Statutory construction is a question of law that we review de novo. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). Our primary concern is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). "We generally avoid construing individual provisions of a statute in isolation from the statute as a whole," *Texas Citizens*, 336 S.W.3d at 628, and we must consider a provision's role in the broader statutory scheme, *see 20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008). We construe administrative rules in the

---

[2] Because the District's Rule 91a motion rests on jurisdictional grounds, we may consider it in this interlocutory appeal. *See Texas Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 349 (Tex. 2004), *superseded by statute on other grounds*, Tex. Gov't Code § 311.034 (holding that interlocutory appeal may be taken from refusal to dismiss for want of jurisdiction whether jurisdictional argument is made by plea to jurisdiction or some other procedural vehicle); *City of Austin v. Liberty Mut. Ins.*, 431 S.W.3d 817, 822 & n.1 (Tex. App. Austin 2014, no pet.) (holding that right of interlocutory appeal in Civil Practice and Remedies Code section 51.014(a)(8) applied to Rule 91a motion to dismiss that challenged jurisdiction). Further, because the District asserted the same arguments in both its plea to the jurisdiction and its Rule 91a motion to dismiss, and because both were based only on the State's pleadings, we address them together, as do the parties.

same manner as statutes. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011).

## DISCUSSION

**Waiver of District's Immunity**

In their first issue, the District and the Commissioners argue that, as a political subdivision, the District is immune from suit unless the legislature has expressly waived immunity and that the applicable statutes contain no such waiver.[3] A legislative waiver of immunity must be expressed in clear and unambiguous language. Tex. Gov't Code § 311.034; *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002). "For a suit to proceed against a governmental unit under a statute [that waives sovereign immunity], the court must first look to the terms of the [a]ct to determine the scope of its waiver and then 'consider the particular facts of the case . . . to determine whether it comes within that scope.'" *Texas Dep't of Criminal Justice v. Cooke*, 149 S.W.3d 700, 704 (Tex. App.   Austin 2004, no pet.) (quoting *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)).

---

[3] Relying on this Court's opinion in *Texas Workers' Compensation Commission v. City of Eagle Pass*, 14 S.W.3d 801 (Tex. App.   Austin 2000, pet. denied), the State initially contends that the Department is exercising its regulatory authority, from which the district is not immune, and that the District therefore lacks immunity from the State's suit. *See id.* at 803 04 (concluding that because political subdivisions derive immunity from state, immunity acts as shield against suits by private parties, but not as shield against state). However, in *City of Eagle Pass*, there was an express statutory waiver of immunity. *See id.* at 806; *see also* Tex. Lab. Code § 415.021. In fact, the Texas Supreme Court expressly observed the same in *City of Galveston v. State*, 217 S.W.3d 466, 471 72 (Tex. 2007). Moreover, in *City of Galveston,* the Supreme Court rejected the argument that cities cannot invoke immunity against the State because they derive their immunity from it and held that, in the absence of legislative consent, the State could not sue the city. *Id.* at 473 74. We therefore turn to the parties' arguments concerning statutory waiver of the District's immunity.

6

The State alleges that the District has unlawfully possessed oysters and seeks recovery under sections 12.301 and 12.303 of the Texas Parks and Wildlife Code.  Section 12.301 provides that "[a] person who kills, catches, takes, possess, or injures any fish . . . is liable to the state for the value of each fish . . . unlawfully killed, caught, taken, possessed, or injured." Tex. Parks & Wildlife Code § 12.301.  Section 12.303 provides that "[t]he attorney general . . . may bring a civil suit . . . in the name of the state to recover the value of each fish . . . unlawfully killed, caught, taken, possessed, or injured." *Id.* § 12.303.  We conclude that, read together, sections 12.301 and 12.303 provide an express statutory waiver of immunity.

Section 12.301 provides that any "person" who unlawfully possesses fish is liable for the value of the fish unlawfully possessed. *Id.* § 12.301.  Section 12.303 specifies the officials, and includes the attorney general, as prosecuting authority who may bring suit in the name of the state to recover the value of each fish unlawfully possessed. *See id.* § 12.303.  The Code Construction Act defines "person" to include a "governmental subdivision or agency."  Tex. Gov't Code § 311.005(2).  Read together, and construed in light of section 311.005(2)'s definition of "person" to include a governmental subdivision, sections 12.301 and 12.303 thus provide that the attorney general may bring suit against any person, including a governmental subdivision such as the District, who unlawfully possesses fish, and therefore provide an express statutory waiver of immunity.[4] *See*

---

[4] The use of the term "person," although defined to include a governmental subdivision, does not indicate legislative intent to waive immunity unless the context of the statute indicates no other reasonable construction. *See* Tex. Gov't Code 311.034.  Because we conclude that sections 12.301 and 12.303 construed *together* provide an express statutory waiver, we need not decide whether the context of section 12.301 indicates that the legislature intended the use of the term "person" in that section alone to waive immunity.

7

Tex. Parks & Wildlife Code §§ 12.301, .303; Tex. Gov't Code §§ 311.005(2), .034; *Texas Citizens*, 336 S.W.3d at 628; *IT-Davy*, 74 S.W.3d at 854.  Because the State's allegation that the District unlawfully possessed oysters falls within this statutory waiver, the State has alleged sufficient facts to establish waiver of immunity from suit.  *See Heckman*, 369 S.W.3d at 150; *Heinrich*, 284 S.W.3d at 378.[5]

The State also alleges that the District acted outside its authority by asserting possession and control over oysters within its jurisdiction  an argument the District and the Commissioners contend is an improper ultra vires claim against the District.  We agree.  An ultra vires claim is one alleging that a public official has acted without legal authority or has failed to perform a purely ministerial act.  *Houston Belt & Terminal Ry. Co. v. City of Houston*, ___ S.W.3d ___, No. 14-0459, 2016 Tex. LEXIS 234, at *2, *11 (Tex. Apr. 1, 2016); *Heinrich*, 284 S.W.3d at 372.  Because ultra vires suits allege that acts of state officials are not authorized by the state, they cannot be brought against the state, which retains its immunity, but must be brought against the state actors in their official capacities, "even though the suit is, for all practical purposes, against the state."  *Heinrich*, 284 S.W.3d at 373; *see City of New Braunfels v. Tovar*, 463 S.W.3d 913, 919 (Tex. App.  Austin 2015, no pet.) ("To invoke the ultra vires exception, a claimant must sue a human agent of the relevant governmental body, in his or her official capacity.").  Consequently, the trial court erred in denying the plea to the jurisdiction and Rule 91a motion as to the State's ultra vires claim against the District.  We therefore sustain the District's and the

---

[5] Because we conclude that sections 12.301 and 12.303 waive the District's immunity for suits alleging violations of those sections, we do not reach the District's argument that section 60.004 of the Texas Water Code does not constitute a waiver of immunity.  *See* Tex. R. App. P. 47.4.

Commissioners' first issue as to the State's ultra vires claim against the District, and overrule it in all other respects. *See Heinrich*, 284 S.W.3d at 373; *Tovar*, 463 S.W.3d at 919; *see also Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011) (per curiam) (dismissing claims alleged against agency only in pre-*Heinrich* petition but remanding to allow plaintiff opportunity to amend to assert ultra vires claim against state officials under *Heinrich*).

**Ultra Vires Claim Against Commissioners for Restitution**

In their second issue, the District and the Commissioners challenge the State's ultra vires claim against the Commissioners. "[W]hile governmental immunity provides broad protection to the state and its officers, it does not bar a suit against a government officer for acting outside his authority    *i.e.*, an ultra vires suit." *Houston Belt & Terminal Ry.*, 2016 Tex. LEXIS 234, at *11. To fall within the ultra vires exception, the State must allege, and ultimately prove, that the Commissioners acted without legal authority or failed to perform a purely ministerial act. *See id.* The State does not argue that the District failed to perform a purely ministerial act but seeks declarations that the Commissioners acted outside their statutory authority by executing the Lease with STORM and that the Lease is therefore void. The District and the Commissioners contend that the State asserts no basis for holding the Commissioners liable and that its ultra vires claim is merely an attempt to avoid the District's immunity. To determine whether a party has adequately pleaded an ultra vires claim, we construe the relevant statutory provisions, apply them to the facts alleged, and analyze whether those facts demonstrate that officials took action outside of their statutory authority. *See id.* at *19 20 ("[W]e look to the ordinance's language to determine whether the railroads have properly alleged that [the director of public works and engineering] acted ultra

9

vires."); *Tovar*, 463 S.W.3d at 919 (quoting *Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 701 02 (Tex. App. Austin 2011, no pet.)). "Although only exercises of absolute discretion are absolutely protected, whether a suit attacking an exercise of limited discretion will be barred is dependent upon the grant of authority at issue in any particular case." *Houston Belt & Terminal Ry.*, 2016 Tex. LEXIS 234, at *20.

The District and the Commissioners cite Water Code provisions authorizing the District to "acquire" and "own land" and to "lease any part of the acquired land to any individual or corporation" as authority for their entering the Lease with STORM. *See* Tex. Water Code § 62.107(a), (b). They also cite Water Code section 61.116(b), which defines "navigation" to include commercial and sport fishing, and argue that the District's Lease with STORM for the purpose of encouraging commercial fishing is consistent with the purposes of a navigation district. *See id.* § 61.116(b). Alternatively, the District and the Commissioners cite language in the Lease limiting STORM's use of the leased lands to oyster cultivation and requiring STORM to comply with all laws and argue that the Lease is merely a lease of land for a limited and legal purpose. The State cites statutory provisions granting the Department authority to manage and regulate the harvesting and conservation of oysters and agency rules implementing that authority. *See* Tex. Parks & Wildlife Code §§ 1.011(d) (providing that Department "shall regulate the taking and conservation of . . . oysters . . . in accordance with the authority vested in it by this code"), 12.001(a) (providing that Department "shall administer the laws relating to . . . oysters . . . , as set out in this code"), 12.0011(a) (providing that Department "is the state agency with primary responsibility for protecting the state's fish and wildlife resources"), 12.302 (charging Department with adopting rules "to

10

establish guidelines for determining value of injured or destroyed fish"), 76.001 .404 (providing for Department's regulation of oyster beds, permits, and licenses, and, in section 76.301, providing that Department "may by proclamation regulate the taking, possession, purchase, and sale of oysters"); 31 Tex. Admin. Code §§ 58.10 .304 (Tex. Parks & Wildlife Dept., Oysters, Shrimp, and Finfish) (Department's rules regulating oysters, shrimp, and finfish).

We conclude that, construed together, these provisions do not authorize the Commissioners to grant STORM the right to use the leased lands to cultivate oyster beds, harvest oysters, or protect the leased lands, oyster beds, and oysters against trespassers. *See Texas Citizens*, 336 S.W.3d at 628; *Parker*, 249 S.W.3d at 396. Section 62.107 authorizes a navigation district to acquire and own land

> adjacent or accessible to the navigable water and ports developed by it which may be necessary or required *for any and all purposes incident to or necessary for the development and operation of the navigable water or ports within the district,* or may be necessary or required for *or in aid of the development of industries on the land*.

Tex. Water Code § 62.107(a) (emphases added). Section 62.107(b) merely provides that a district may then lease any of the land acquired for the purposes enumerated in section 62.107(a), which notably do not include regulating oysters. *See id.* § 62.107(b). While section 61.116(b) defines "'navigation' *as used herein*" to include commercial and sport fishing, it does so in the context of authorizing the state to lease lands to navigation districts "only for purposes reasonably related to the promotion of navigation" and does not set out the purposes or authority of a navigation district. *See id.* § 61.116(b) (emphasis added). As a political subdivision of the state and a self-liquidating navigation district created under the provisions of article XVI, section 59 of the Texas Constitution,

11

the District shares in the state's inherent immunity but is not a sovereign entity distinct from the state and possesses only those powers and privileges expressly or impliedly conferred upon it. *See Wasson Interests, Ltd. v. City of Jacksonville*, ___ S.W.3d ___, No. 14-0645, 2016 Tex. LEXIS 232, at *1 (Tex. Apr. 1, 2016); Tex. Const. art. XVI, § 59 (providing that navigation districts have "such powers of government and . . . authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law"). The District is statutorily authorized to provide for and make improvements for navigation of inland and coastal waters, for preservation and conservation of inland and coastal waters for navigation, for control and distribution of storm water and floodwaters of rivers and streams in aid of navigation, and for other purposes necessary or incidental to the navigation of inland and coastal waters, *see* Tex. Water Code §§ 62.101, 63.152, and in doing so may take such actions as regulating wharfage and facilities connected with waterways and ports; owning, constructing, and regulating land, waterways, and facilities; charging for the use of facilities; entering into leases and contracts; and issuing bonds, *id.* § 63.153. Thus, while the District may improve waters for purposes of navigation, including commercial fishing, section 61.116 does not grant it authority or discretion to permit fishing or harvesting of oysters, much less the right to convey such authority in leasing land it owns. *See Houston Belt & Terminal Ry.*, 2016 Tex. LEXIS 234, at *27 28 (while director of public works and engineering had discretion to interpret term, no language in ordinance granted him discretion to interpret term contrary to definition in ordinance); *Marks*, 319 S.W.3d at 663; *Pochucha*, 290 S.W.3d at 867.

The District and the Commissioners cite no provisions in article XVI, section 59 of the Texas Constitution or in the Water Code authorizing the District to exercise control over or permit fishing or harvesting of oysters, and we are aware of none. *See* Tex. Const. art. XVI, § 59 (declaring development of navigation in inland and coastal waters of State to be public purpose and authorizing creation of conservation and reclamation districts); Tex. Water Code §§ 60.001 .564 (setting out general provisions concerning navigation districts), 62.001 .318 (governing navigation districts formed under article XVI, section 59), 63.001 .379 (governing self-liquidating navigation districts created under article XVI, section 59).  Rather, that authority is expressly vested in the Department. *See* Tex. Parks & Wildlife Code §§ 1.011(d), 12.001(a), 12.0011(a), 76.001 .404; 31 Tex. Admin. Code 58.10 .304; *see also Marks*, 319 S.W.3d at 663; *Pochucha*, 290 S.W.3d at 867. Moreover, as a political subdivision, the District is deemed an agent of the state for sovereign immunity purposes only when it exercises its powers for a public purpose.  *See Wasson*, 2016 Tex. LEXIS 232 at *12.  Texas courts have consistently held that public property leased to a private party for private commercial purposes is not used for a public purpose.  *City of San Antonio ex rel. City Pub. Servs. Bd. of San Antonio v. Bastrop Cent. Appraisal Dist.*, No. 03-06-00081-CV, 2006 Tex. App. LEXIS 9051, at *9  10 (Tex. App.   Austin Oct. 19, 2006, pet. denied) (mem. op.); *cf. Lower Colorado River Auth. v. Burnet Cent. Appraisal Dist.*, No. 03-15-00724-CV, 2016 Tex. App. LEXIS 5982, at * 5  7 (Tex. App.   Austin June 7, 2016, no pet. h.) (holding that where LCRA's lease to private entity limited use to purposes authorized by statute, land was leased for public purpose).

13

The State alleges that in entering into the Lease with STORM, the Commissioners exceeded their statutory authority by asserting possession of and control over oysters and purporting to pass that possession and control to STORM.[6]  In the Lease, the District granted STORM rights "to use, create, manage, possess, cultivate or control oyster beds, to seed, plant, transplant, sow, cultivate, depurate or harvest oysters lawfully and commercially," "to promote commercial fishing," and "to protect the Land, each oyster bed . . . and the oysters . . . against trespass and trespassers." That language presupposes that the District claimed possession of and control over oysters such that it could grant those rights to STORM.  In light of the statutory grant of authority over oysters to the Department, the absence of any such statutory authority vested in the Commissioners, and the lease for a private commercial purpose, and construing the pleadings liberally in favor of jurisdiction, accepting the allegations as true, and applying the applicable statutory provisions to the facts before us, we conclude that the State has asserted that the Commissioners acted beyond their statutory authority by entering into the Lease with STORM and thus has properly asserted an ultra vires claim against the Commissioners.  *See Houston Belt & Terminal Ry.*, 2016 Tex. LEXIS 234, at * 19  20; *Heinrich*, 284 S.W.3d at 372; *Tovar*, 463 S.W.3d at 919.

---

[6] The State also alleges that the District failed to stop STORM from asserting control over oysters by preventing holders of leases, known as certificates of location, issued by the Department from "trespassing" on the leased lands.  The record reflects that STORM issued "No Trespass Notices" to third parties informing them that they were not authorized to "engage in oyster activities" without STORM's consent.  The State argues that the District did nothing to prevent STORM from asserting such control over oysters and issuing the notices.  The District does not dispute that it did not prevent STORM from issuing no trespass notices but questions whether it has a legal duty to do so, an issue we need not decide because it is not necessary for our resolution of the plea to the jurisdiction.

14

The District and the Commissioners also argue that the State's claim under sections 12.301 and 12.303 for restitution for the value of each oyster unlawfully possessed is actually a claim for past damages, which is impermissible under *Heinrich*. *See* 284 S.W.3d at 375 76. However, while the Texas Supreme Court in *Heinrich* held that an ultra vires claim against state officials generally may seek prospective relief only, it also expressly noted that the legislature can authorize retrospective relief if appropriate. *See id.* at 377 (citing Tex. Loc. Gov't Code § 180.006, which waives immunity for firefighter and police officer claims for back pay and civil penalties, and observing that "the contours of the appropriate remedy must be determined by the Legislature"). Here, sections 12.301 and 12.303 expressly provide for suit by the attorney general to recover the value of oysters unlawfully possessed. *See* Tex. Parks & Wildlife Code §§ 12.301, .303. Having already concluded that sections 12.301 and 12.303 provide an express statutory waiver of immunity for the State's claims against the District for unlawfully possessing oysters, *see IT-Davy*, 74 S.W.3d at 854, we further conclude that the legislature has expressly authorized retrospective relief as against the District violations of those statutory provisions, *see Heinrich*, 284 S.W.3d at 377. We overrule the District's and the Commissioners' second issue.

**Ripeness**

In their third issue, the District and the Commissioners contend that the State's claim is not ripe for adjudication because the State has not alleged that the District "possessed" the oysters but instead has alleged only that the District "asserted a right of possession." According to the District and the Commissioners, the State has sued them on the basis that the District has asserted a right to possess shellfish in the future, such that the controversy is purely hypothetical, and any

opinion of this Court would be merely advisory. We disagree with the District's and the Commissioners' analysis of the State's claim, which essentially equates "possessed" with "taken." *See* Tex. Parks & Wildlife Code §§ 1.101(5) (defining "take" to mean "collect, hook, hunt, net, shoot, or snare, by any means or device," including "an attempt to take or to pursue in order to take"); 12.301 (providing that any person who kills, catches, *takes*, *possesses*, or injures any fishis liable for value of each fish) (emphasis added). We presume the legislature chose a statute's language with care, including each word chosen for a purpose. *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008). Therefore, we do not read "possessed" to mean the same as "taken." *See Pochucha*, 290 S.W.3d at 867; *In re M.N.*, 262 S.W.3d at 802.

The State alleged that the District entered into the Lease with STORM granting STORM exclusive rights for thirty years to cultivate and harvest oysters and that, by entering the Lease, the District asserted unlawful possession and control over oysters and purported to convey that possession and control over oysters to STORM to the exclusion of all others. The Lease granted STORM rights to harvest or "take" oysters and to prevent others from doing so, and STORM has taken actions consistent with those rights. On these facts, we cannot conclude that the State's claim involves a purely hypothetical controversy or that an opinion by this Court is advisory. We overrule the District's and the Commissioners' third issue.

## CONCLUSION

We reverse the trial court's order denying the District's and Commissioners' plea to the jurisdiction and Rule 91a motion as to the State's ultra vires claim against the District and dismiss that claim. We affirm the trial court's order in all other respects.

16

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed in Part; Reversed and Dismissed in Part

Filed:   July 8, 2016

17

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

**JUDGMENT RENDERED JULY 8, 2016**

---

**NO. 03-15-00744-CV**

---

**The Chambers-Liberty Counties Navigation District;
Terry Haltom, in his Individual Capacity as District Commissioner;
Allen Herrington, in his Individual Capacity as District Commissioner;
Ken Coleman, in his Individual Capacity as District Commissioner;
Ken Mitchell, in his Individual Capacity as District Commissioner; and
Dave Wilcox, in his Individual Capacity as District Commissioner, Appellants**

**v.**

**The State of Texas, Appellee**

---

**APPEAL FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY
BEFORE JUSTICES PURYEAR, GOODWIN, AND FIELD
AFFIRMED IN PART; REVERSED AND DISMISSED IN PART --
OPINION BY JUSTICE GOODWIN**

---

This is an appeal from the interlocutory order signed by the trial court on November 23, 2015. Having reviewed the record and the parties' arguments, the Court holds that there was reversible error in the trial court's interlocutory order. Therefore, the Court reverses the trial court's order denying the District's and Commissioners' plea to the jurisdiction and Rule 91a motion as to the State's ultra vires claim against the District and dismiss that claim. The Court affirms the trial court's interlocutory order in all other respects. Each party shall bear their own costs relating to this appeal, both in this Court and in the court below.