TEXAS WORKERS' COMPENSATION COMMISSION, Appellant,

v.

CITY OF EAGLE PASS/TEXAS MUNICIPAL LEAGUE WORKERS' COMPENSATION JOINT INSURANCE FUND; and Capital Metro Transportation Authority/Texas Municipal League Workers' Compensation Joint Insurance Fund, Appellees.

No. 03–99–00406–CV.

Court of Appeals of Texas, Austin.

March 9, 2000.

Dewey E. Helmcamp, III, Asst. Atty. Gen., Administrative Law Division, Austin, for appellant.

J. David Bickham, Jr., Vinson & Elkins, L.L.P., Austin, for appellees.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and YEAKEL.

MARILYN ABOUSSIE, Chief Justice.

Appellant, the Texas Workers' Compensation Commission ("the Commission"), appeals from a district court judgment reversing a Commission order assessing penalties. The judgment declared that appellees,[1] as political subdivisions of the State, possess immunity from administrative penalties and that their immunity had not been waived. We will reverse the decision of the trial court and render judgment in accordance with the Commission's order.

## BACKGROUND

The Commission is authorized to review and to audit the records of insurance carriers to determine if they are in compliance with the Workers' Compensation Act ("the Act"). *See* Tex. Lab.Code Ann. §§ 414.001–.007 (West 1996); 28 Tex. Admin. Code §§ 180.1–.8 (1999). The defini-

---

1. The Commission assessed administrative penalties against appellees, the City of Eagle Pass and Capital Metro. Both entities belong to the Texas Municipal League Workers' Compensation Joint Insurance Fund, a self-insurance pool. For convenience, we will refer to these parties collectively as appellees.

tion of insurance carrier includes political subdivisions that self-insure. *See* Tex. Lab.Code Ann. § 401.011(27)(C) (West Supp.2000). Appellees are unquestionably political subdivisions of the State of Texas. In reviewing the records of the City of Eagle Pass ("Eagle Pass") and the Capital Metro Transportation Authority ("Capital Metro"), the Commission found that each appellee had twice violated section 409.023 of the Labor Code by making late payments of benefits. *See id.* § 409.023 (West 1996). Eagle Pass paid benefits four days late in March 1994 and one day late in November 1994. Capital Metro paid benefits eighteen days late in March 1995 and thirteen days late in April 1995. The Commission assessed administrative penalties against Eagle Pass in the amount of $1,875 and against Capital Metro in the amount of $7,275.

At an administrative hearing, appellees stipulated to the violations of section 409.023 and to the amount of the penalties imposed. Appellees' sole contention was that as political subdivisions, they were immune from the imposition of administrative penalties under the doctrine of sovereign immunity. The Administrative Law Judge ("ALJ") rejected appellees' argument and upheld the Commission's order assessing penalties. Appellees subsequently filed suit in district court in Travis County for judicial review of the ALJ's decision. In the suit, appellees again urged that the Commission could not assess administrative penalties against political subdivisions because the Legislature had not expressly waived the subdivisions' sovereign immunity from such penalties. In reversing the ALJ's decision, the district court concluded that sovereign immunity prevented the State's imposition of penalties absent the Legislature's express waiver of the subdivision's immunity. The Commission then appealed to this Court.

## DISCUSSION

### Sovereign Immunity

██ In its sole issue, the Commission contends that sovereign immunity does not apply to the present situation. As this issue is a pure question of law, we review the trial court's ruling *de novo*. *See Republic W. Ins. Co. v. State*, 985 S.W.2d 698, 701 (Tex.App.—Austin 1999, pet. dism'd w.o.j.).

The Commission argues that because municipalities and other political subdivisions of the State exist under the authority of the State and are subject to the State's regulatory authority, such entities do not enjoy sovereign immunity from state regulatory authority. We agree.

██ Appellees offer no authority for the proposition that political subdivisions such as municipalities are sovereign entities. To the contrary, municipalities are created as political subdivisions of the State and "represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them." *Payne v. Massey*, 145 Tex. 237, 196 S.W.2d 493, 495 (1946). A municipality's sovereignty is dependent upon that of the State. *See City of Irving v. Dallas/Fort Worth Int'l Airport Bd.*, 894 S.W.2d 456, 465 (Tex.App.—Fort Worth 1995, writ denied). While it is well established that sovereign immunity protects the federal government from state suits and vice versa, this immunity stems from the basic precept of federalism that the federal and several state governments each possess independent sovereignty. Because political subdivisions of the State do not possess such independent sovereignty, they have no immunity as against the State.

██ Under the common law doctrine of immunity, municipalities and other political subdivisions of the State possess limited immunity from actions brought by private third parties. This immunity results from agency principles and the fact that municipalities and political subdivisions are agents of the State. *See Lawrence v. City of Wichita Falls*, 906 S.W.2d 113, 115 (Tex.

App.—Fort Worth 1995, writ denied). A political subdivision's immunity is a privilege afforded it based on its existence as a subdivision of the State, and "[a] municipality, *as a political subdivision of the state,* is not liable for the acts or conduct of its officers or employees...." *City of Lancaster v. Chambers,* 883 S.W.2d 650, 658 (Tex.1994) (emphasis added). Thus, a political subdivision's derivative immunity acts as a shield against actions brought by private parties but not as a shield against the State, from which the subdivision derives its immunity.

The cases appellees cite do not persuade us that political subdivisions possess immunity against the State. In their argument, appellees rely heavily on cases that involve conflicts between state and federal governments. Appellees rely upon cases that stand for the proposition that state and federal sovereigns lack power to regulate or sue one another absent consent. *See, e.g., United States Dep't of Energy v. Ohio,* 503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992). In *Ohio,* the Supreme Court held that the State of Ohio could not collect administrative penalties against an agency of the federal government because Congress has not waived the federal government's sovereign immunity from liability for civil fines imposed by a state for violations of certain federal statutes. *See* id. at 611, 112 S.Ct. 1627. Having determined that political subdivisions in Texas are not independently sovereign, we find that cases like *Ohio,* which involve conflicts between two independent sovereigns, offer no guidance in determining the present issue.

Appellees offer a single New Jersey opinion containing language that questions whether political subdivisions enjoy immunity against state regulation. *See New Jersey Dep't of Envtl. Protection v. Middlesex County Bd. of Chosen Freeholders,* 206 N.J.Super. 414, 502 A.2d 1188 (1985), *aff'd,* 208 N.J.Super. 342, 506 A.2d 13

(1986). However, that case was not decided on the basis of immunity. In *Middlesex,* the court held that a state regulatory agency charged with the administration of waste-management plans could not sue counties for alleged failure to adopt plans because "the exclusive remedy when a county fails to discharge its planning responsibilities under the [New Jersey Solid Waste Management Act] is for the [New Jersey Department of Environmental Protection] to exercise its own planning powers...." *Id.* at 1196. Thus, *Middlesex* was decided on the basis of the agency's enabling statute. Because the holding in *Middlesex* did not turn on sovereign immunity, that case does not persuade us that political subdivisions of the State of Texas have independent sovereignty or sovereign immunity vis-à-vis the State. We sustain the Commission's contention that sovereign immunity is inapplicable in the present situation.

### Application of Labor Code Provisions Against Subdivisions

■ Appellees respond by arguing that even if sovereign immunity does not protect them from state regulation, section 415.021 of the Labor Code, which authorizes the Commission to assess administrative penalties, does not empower the Commission to assess penalties against political subdivisions. Section 415.021 specifically authorizes the Commission to assess administrative penalties "against a *person* who commits an administrative violation." Tex. Lab.Code Ann. § 415.021(a) (West 1996) (emphasis added). Before 1993, the Act defined "person" as an "individual, corporation, organization, business trust, estate, trust, partnership, association, or other legal entity." [2] The definition did not expressly include a governmental subdivision.

Appellees refer us to cases in which courts have found that the term "other legal entity" does not include a political

---

**2.** Act of December 1, 1989, 71st leg., 2nd C.S., ch. 1, § 1.03(38), 1989 Tex. Gen. Laws

1, 5 (Tex.Rev.Civ.Stat.Ann. art. 8308–1.03(38), since repealed).

subdivision. In *Bridges v. Texas A & M University System,* 790 S.W.2d 831, 834–35 (Tex.App.—Houston [14th Dist.] 1990, no writ), the court construed a definition of "person" under the Texas Insurance Code that was substantially similar to the pre-codified definition here and held that because the definition made no reference to the State or state agencies, the Legislature did not waive governmental immunity. *See id.* Because we have determined that sovereign immunity is not applicable in the present case, the reasoning in *Bridges* offers no guidance here. The only non-immunity case appellees cite involved a substantially different definition. In *Lake LBJ Municipal Utility District v. Coulson & C.A.E., Inc.,* 839 S.W.2d 880, 890–91 (Tex.App.—Austin 1992, no writ), ·this Court held that article 2226,[3] which subjected a "person" to liability for attorneys' fees, did not encompass a "governmental unit." However, article 2226 enumerated "person" and "other legal entity" as separate and distinct categories, whereas even the pre-codified workers' compensation statute defined "person" to *include* "other legal entities." Because the cases appellees cite do not involve comparable situations, they are not instructive.

The Legislature codified the Labor Code as part of the State's continuing statutory revision program to reorganize the law without substantive change. *See* Tex. Lab. Code Ann. § 1.001(a) (West 1996). When the Workers' Compensation Act was codified in 1993, the Act's definition of "person" was omitted with a note explaining that the omitted definition was "substantively identical" to the definition of "person" found in the Code Construction Act. *See id.* § 401.011, Revisor's Note 8 (West 1996). The Code Construction Act expressly includes a governmental subdivi-

sion within its definition of "person."[4] Thus, appellees are indisputably "persons" against which the Commission may assess an administrative penalty under the Code Construction Act. Appellees argue that the Revisor's Note is incorrect because the two definitions are not substantively identical, that adopting the Code Construction Act's definition would be a substantive change, and, because no substantive change was intended or allowed, that the pre–1993 definition of "person" should be given effect despite its repeal.

■ Appellees rely on *Johnson v. City of Fort Worth,* 774 S.W.2d 653 (Tex.1989), to argue that if the codified version of the law is substantively different from the pre-codified statute, the earlier statute must control. This reliance is misplaced. The Texas Supreme Court recently noted that *Johnson* did not involve a substantive change between the former law and the codified statute and that the court was thus not called upon in that case to decide whether the old law controlled over the new. *See Fleming Foods of Texas, Inc. v. Rylander,* 6 S.W.3d 278, 286 (Tex.1999). Faced squarely with that issue in *Fleming Foods,* the court held that when the later law is direct and unambiguous, it must be given effect. *See id.* Without deciding the construction of the repealed definition, the current definition clearly allows for the assessment of administrative penalties against a political subdivision in appellees' position. Even assuming, as appellees contend, the codification caused a substantive change, the current definition must be given effect. "The codifications enacted by the· Legislature are the law of this State, not the prior, repealed law." *Id.* Section 415.021 authorizes penalties against appellees.

3. Tex.Rev.Civ. Stat. Ann. art 2226, since repealed and codified as amended at Tex. Civ. Prac. & Rem.Code Ann. § 38.001 (West 1986).

4. Section 311.005(2) of the 1985 Code Construction Act defines a "person" to include a

"corporation, organization, *government or governmental subdivision or agency,* business trust, estate, trust, partnership, association, and any other legal entity." Tex. Gov't Code Ann. § 311.005(2) (West 1998) (emphasis added).

"We must be able to accept and to rely upon the words written by the Legislature if they are clear and unambiguous, their meaning is plain when the code in which they appear is read in its entirety, and they do not lead to absurd results." *Id.* at 285. The Workers' Compensation Act specifically requires political subdivisions to provide workers' compensation benefits to their employees. *See* Tex. Lab.Code Ann. § 504.011 (West 1996). If a subdivision chooses to provide such benefits through self-insurance, then the subdivision falls under the Act's definition of "insurance carrier," which expressly includes "a governmental entity that self-insures, either individually or collectively." *Id.* § 401.011(27)(C). Section 409.023 of the Act defines when an insurance carrier commits an administrative violation and specifies the class of administrative violation that non-compliance creates. *See id.* § 409.023. Section 415.022 of the Act specifies the amount of administrative penalties that can be assessed for each class of an administrative violation. *See id.* § 415.022 (West 1996). Read in its entirety, the Act clearly subjects political subdivisions to administrative penalties.

The plain meaning of the statutory text and the structure of the Act as a whole support the conclusion that political subdivisions and municipalities are subject to administrative penalties under the Workers' Compensation Act. We therefore reject appellees' argument that the Commission lacks the statutory authority to impose penalties against them, and we resolve any conflict in favor of the Commission. *See City of Dallas v. Southwest Airlines,* 371 F.Supp. 1015, 1034 (N.D.Tex.1973) (stating that when conflict exists between municipality and state regulatory agency, preference will be given to regulatory agency), *aff'd,* 494 F.2d 773 (5th Cir.Tex.1974). For the reasons stated above, we sustain the Commission's sole issue.

## CONCLUSION

We determine that political subdivisions have no sovereign immunity against the State and that section 415.021 of the Texas Labor Code subjects political subdivisions to administrative penalties. We therefore reverse the trial court's judgment and render judgment in accordance with the Commission's order assessing penalties against Eagle Pass in the amount of $1,875 and against Capital Metro in the amount of $7,275. *See* Tex.R.App. P. 43.2(c).