Opinion issued September 10, 2004












In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-03-00557-CV
____________

THE STATE OF TEXAS, Appellant

V.

THE CITY OF GALVESTON, Appellee
 

 
 
On Appeal from the 212th District Court
Galveston, County, Texas
Trial Court Cause No. 03CV0018
 

 
 
OPINION DISSENTING FROM 
THE DENIAL OF EN BANC CONSIDERATION
 
          The panel opinion and this court’s denial of en banc consideration of this case
will send a shockwave of grave concern through every local governmental unit
throughout the entire state—every city, every county, every school district, every
municipal utility district. The panel’s holding that “governmental immunity does not
shield a municipality from the State’s suit asserting tort claims for actual damages
because any immunity that a municipality enjoys derives from the State’s own
immunity,” in effect, judicially creates a state sovereignty exception to governmental
immunity for all local governmental units, subjecting them to unlimited tort liability
when they are sued by a state governmental unit—all without express consideration
of or approval by the Texas Legislature. Accordingly, I agree with Justice Keyes’s
dissent, and I respectfully dissent from the denial of en banc consideration.
Background
          In its original petition, the Texas Department of Transportation (the
Department) alleges that the City of Galveston (the City) “negligently caused damage
to property belonging to Plaintiff, [the Department].” It is undisputed that the
Department’s negligence cause of action for property damages arises out of the City’s
performance of a governmental function.
Municipal Liability
          Under Texas law, “[a] city is immune from liability for its governmental
actions,” unless the Legislature has expressly waived governmental immunity. City
of La Porte v. Barfield, 898 S.W.2d 288, 291 (Tex. 1995). Governmental immunity
from suit defeats a court’s subject matter jurisdiction. Dallas Area Rapid Transit v.
Whitley, 104 S.W.3d 540, 542 (Tex. 2003). In a suit against a governmental unit, a
plaintiff must affirmatively demonstrate the court’s jurisdiction by alleging a valid
waiver of immunity. Id.
          The Texas Supreme Court has long recognized that “it is the Legislature’s sole
province to waive or abrogate” governmental immunity. Tex. Natural Res.
Conservation Comm’n v. IT–Davy, 74 S.W.3d 849, 853 (Tex. 2002) (emphasis
added); see also Barfield, 898 S.W.2d at 291 (“The waiver of governmental immunity
is a matter addressed to the Legislature.”). The Texas Supreme Court has consistently
deferred to the Legislature to waive sovereign immunity from suit “because this
allows the Legislature to protect its policymaking function.” IT–Davy, 74 S.W.3d at
854. Moreover, it is a well-established rule that, for the Legislature to waive 
immunity, “it must do so by clear and unambiguous language.” Barfield, 898 S.W.2d
at 291.
          Under title 5 of the Texas Civil Practice and Remedies Code (the Texas Tort
Claims Act),


 entitled “Government Liability,” in subchapter B, entitled “Tort
Liability of Governmental Units,” the Legislature “waived and abolished” sovereign
immunity from suit “to the extent of liability created by this chapter.” Tex. Civ.
Prac. & Rem. Code Ann. § 101.025 (Vernon 1997) (emphasis added).


 In section
101.0215, entitled “Liability of a Municipality,” the Legislature specifically noted
that
A municipality is liable under this chapter for damages arising from its
governmental functions, which are those functions that are enjoined on
a municipality by law and are given it by the state as part of the state’s
sovereignty, to be exercised by the municipality in the interest of the
general public . . . .
 
Id. § 101.0215 (Vernon Supp. 2004-2005) (emphasis added).
          In regard to negligence actions brought against governmental units arising from
their governmental functions, in section 101.021, entitled “Governmental Liability,”
the Legislature expressly provided that
A governmental unit in the state is liable for:
 
(1)property damage, personal injury, and death proximately caused
by the wrongful act or omission or the negligence of an employee
acting within his scope of employment if:
 
(A)the property damage, personal injury, or death arises from
the operation or use of a motor-driven vehicle or motor-driven equipment; and
 
(B)the employee would be personally liable to the claimant
according to Texas law; and
 
(2)personal injury and death so caused by a condition or use of
tangible personal or real property if the governmental unit would,
were it a private person, be liable to the claimant according to
Texas law.
Id. § 101.021 (Vernon 1997) (emphasis added). A “governmental unit” is defined as
“a political subdivision of this state, including any city.” Id. § 101.001(3)(B) (Vernon
Supp. 2004-2005).
          Regardless of whether a city’s governmental immunity from tort liability
derives from the State’s sovereign immunity, a city, as a “governmental unit” enjoys
that immunity against all plaintiffs, period. The Legislature, recognizing that cities
enjoy governmental immunity from liability for their governmental functions, has
expressly provided that municipalities are “liable” for property damages “arising from
their governmental functions” only in the limited circumstance in which the property
damages are proximately caused by the wrongful act or omission or the negligence
of an employee acting within his scope of employment if the property damages arise
from the operation or use of a motor-driven vehicle or motor-driven equipment. Id.
§§ 101.021, 101.0215. According to the Texas Legislature, this is the only
circumstance in which a plaintiff—any plaintiff—may sue a municipality for property
damages arising from its performance of a governmental function.
          Moreover, it does not logically follow that “because any immunity that a
municipality enjoys derives from the State’s own immunity,” a city’s “governmental
immunity does not shield” it from tort claims asserted by state governmental units. 
The public policy underlying sovereign and governmental immunity is simply that
“[s]ubjecting the government to liability may hamper governmental functions by
shifting tax resources away from their intended purposes toward defending lawsuits
and paying judgments.” IT–Davy, 74 S.W.3d at 854. This public policy applies
equally to all governmental units, not just to state governmental units. As noted
above, the Texas Supreme Court has deferred to the Legislature to waive sovereign
immunity from suit because “the Legislature is better suited than the courts to weigh
the conflicting public policies associated with waiving immunity and exposing the
government to increased liability, the burden of which the general public must
ultimately bear.” Id. (emphasis added). In fact, “in the Code Construction Act, the
Legislature expressed its desire to maintain control over sovereign immunity ‘[i]n
order to preserve [its] interest in managing state fiscal matters through the
appropriations process.” Id. (quoting Tex. Gov’t Code Ann. § 311.034 (Vernon
Supp. 2004-2005)).
          The bottom line is that, if the Texas Legislature wants to subject municipalities
and other local governmental units to unlimited liability in negligence suits brought
by state governmental units, it can amend the Texas Tort Claims Act to allow for such
liability. However, this is not a job for an intermediate court of appeals.
          Finally, it must be noted that the majority’s reliance on the reasoning and
conclusion of Texas Workers’ Compensation Commission v. City of Eagle Pass/Texas
Municipal League Workers’ Compensation Joint Insurance Fund, 14 S.W.3d 801
(Tex. App.—Austin 2000, pet. denied), is misplaced. The point of Eagle Pass was
not that governmental immunity does not shield a municipality from tort claims
asserted by the State, but that “because municipalities and other political subdivisions
of the State exist under the authority of the State and are subject to the State’s
regulatory authority, such entities do not enjoy sovereign immunity from state
regulatory authority.” Id. at 803 (emphasis added). Accordingly, the Eagle Pass
court sustained “the Commission’s contention that sovereign immunity is
inapplicable in the present situation.” Id. at 804 (emphasis added). This is a far cry
from subjecting all local governmental units in Texas to unlimited tort liability in
lawsuits brought by state governmental units “because any immunity that a [local
governmental unit] enjoys derives from the State’s own immunity.”
     Conclusion
          Immunity means immunity, i.e., immunity from suit or liability as to all
potential plaintiffs—including state governmental units. Regardless of any
“derivative” nature of sovereign immunity, the Legislature, in the Tort Claims Act,
has expressly defined, quite literally, the “governmental liability” of municipalities
and all other governmental units as to all potential plaintiffs. Thus, the panel’s broad
holding judicially creates an exception to the Legislature’s expressly stated limits of
liability for local governmental units,


 and the primary effect of the holding is that it
relieves the State of the deficiency of its own pleadings. Accordingly, en banc
consideration of the panel’s extraordinary holding, especially in light of its far-reaching effects, is required. See Tex. R. App. P. 41.2(c).
          As noted in the amicus curiae briefs filed by the Texas Municipal League, the
Texas City Attorney’s Association, the Texas Council Risk Management Fund, the
Texas Water Conservation Association Risk Management Fund, and the Texas
Association of Counties in support of the City of Galveston:
[I]ntermediate appellate courts wisely tend to refrain from recognizing
new areas of liability, and, in this particular instance, the court of
appeals is compelled to exercise restraint because the exclusive power
to consent to suit against governmental units resides in the Legislature,
not the courts.
          I agree. This Court should give due consideration to the good-faith counsel of
amici.
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Justices Taft, Keyes, and Bland.
 
Justice Keyes, dissenting.
 
En banc consideration was requested. See Tex. R. App. P. 41.2(c).
 
A majority of Justices voted against en banc consideration. See id.
 
Justice Jennings, dissenting from the denial of en banc consideration.