# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00241-CV

**Texas Political Subdivisions Joint Self-Insurance Fund, Appellant**

**v.**

**Texas Department of Insurance–Division of Workers' Compensation and Commissioner Cassie Brown in her Official Capacity, Appellees**

### FROM THE 455TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-004227, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

## O P I N I O N

Appellant Texas Political Subdivisions Joint Self-Insurance Fund (TPS Fund) challenges the trial court's order denying its combined plea to the jurisdiction and summary-judgment motion. In the underlying suit, the TPS Fund seeks judicial review of two Commissioner's Orders issued by appellees Texas Department of Insurance–Division of Workers' Compensation and Commissioner Cassie Brown in her official capacity (collectively, the Division). In the orders, the Division assessed administrative penalties totaling $132,500 against the TPS Fund for violations of the Texas Labor Code involving the nonpayment or late payment of workers' compensation benefits. In the TPS Fund's plea and motion, it asserted that it retains governmental immunity from liability for administrative penalties assessed against it. For the reasons explained below, we affirm the trial court's order.

## BACKGROUND

**Statutory Framework**

The Texas Workers' Compensation Act is a comprehensive legislative framework that creates a statewide no-fault insurance system for workers injured or killed in the course and scope of their employment. *See generally* Tex. Lab. Code §§ 401.001-419.007; *see also Texas W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 186 (Tex. 2012) (explaining that when employer elects to subscribe to workers' compensation insurance, employer's insurance carrier is liable for compensation of employee's injury if employee is subject to Workers' Compensation Act and employee's injury arises out of course and scope of employment). The Texas Department of Insurance is the state agency designated to oversee the workers' compensation system, and within the Department, the Division was established to administer and operate the workers' compensation system. *See* Tex. Lab. Code § 402.001.

The TPS Fund is a joint fund formed under the Interlocal Cooperation Act by certain self-insured governmental entities for the purpose of providing workers' compensation benefits for its participants' employees. *See generally* Tex. Gov't Code Ch. 791 (governing Interlocal Cooperation Contracts); *see also* Tex. Lab. Code § 406.003 (establishing that employers may obtain workers' compensation insurance coverage through licensed insurance company or through self-insurance as provided by Act). The TPS Fund describes itself as a political subdivision of the State that operates as a risk-management pool and workers' compensation claim administrator for its members, which are public-school districts, counties, cities, and other units of local government.

2

**The Commissioner's Orders**

In November 2019, the Division's staff initiated two separate cases before an administrative-law judge (ALJ) at the State Office of Administrative Hearings (SOAH), seeking to sanction the TPS Fund. In one case, the Division sought sanctions in the amount of $160,000 based on allegations that a 2018 audit identified multiple instances in which the TPS Fund failed to accurately pay death benefits and failed to timely or accurately report claim data. The ALJ ultimately found that the TPS Fund underpaid the death-benefit amounts for three claims by a total of $384,132.[1] In the other case, the Division sought sanctions in the amount of $7,500 based on allegations that the TPS Fund failed to timely pay benefits to an injured employee that should have begun by October 30, 2017. The ALJ ultimately found that the TPS Fund paid the injured employee the principal amount 112 days late and paid accrued interest 526 days late.

In each of the proceedings, the TPS Fund filed a plea to the jurisdiction, asserting that, at the time of the TPS Fund's alleged violations, the TPS Fund enjoyed governmental immunity from suit and liability for administrative penalties and sanctions, based on a recent amendment to Texas Labor Code Section 504.053(e). *See* Act of May 26, 2019, 86th Leg., R.S. ch. 701, § 6, sec. 504.053, 2019 Tex. Gen. Laws 2005, 2006 (SB 2551 or Act) (codified at Tex. Labor Code § 504.053(e)). In the proposals for decision (PFDs) in each case, the ALJ explained that she had denied the TPS Fund's pleas to the jurisdiction and her reasoning for those denials. The ALJ determined that the enforcement actions had been brought by Division staff under Chapters 408, 409, and 415 of the Labor Code, not Chapter 504, and that "[t]he Texas Workers'

---

[1] By the time the ALJ issued the proposal for decision in the SOAH proceeding, the TPS Fund had paid all outstanding amounts, including interest, to the beneficiaries for the underpaid death-benefit amounts.

Compensation Act contains a clear and unambiguous waiver of sovereign immunity for governmental entities that self-insure, either individually or collectively." Based on the evidence of violations and the applicable law, the ALJ recommended that the TPS Fund be ordered to pay $125,000 as an administrative penalty in the death-benefits case and $7,500 as an administrative penalty in the injured-employee case.

The Commissioner subsequently issued two Orders incorporating the ALJ's PFDs by reference. The Orders also incorporated and adopted by reference the findings of fact and conclusions of law listed in the PFDs. Accordingly, the Division assessed administrative penalties of $7,500 and $125,000 against the TPS Fund.

The TPS Fund subsequently sought judicial review of the Commissioner's Orders in Travis County District Court. The TPS Fund filed a combined plea to the jurisdiction and summary-judgment motion, again asserting that its governmental immunity has not been waived for the assessment of administrative penalties by the Division and seeking attorneys' fees and costs under Texas Civil Practice and Remedies Code Sections 105.005 and 37.009.[2] *See* Tex. Civ. Prac. & Rem. Code § 37.009 (allowing court to "award costs and reasonable and necessary attorney's fees as are equitable and just" in proceeding brought under Uniform Declaratory Judgments Act); *id.* § 105.005 (allowing court to award prevailing party "reasonable attorney's fees and costs incurred in defending against a frivolous regulatory action during the contested case and judicial review of the decision in the contested case if . . . there is a final determination that the regulatory action is frivolous").

_____

[2] The TPS Fund also sought a declaratory judgment that its governmental immunity has not been waived for the assessment of administrative penalties by the Division and that the TPS Fund's substantial rights had been prejudiced by the Orders.

4

After a hearing, the trial court denied the plea and motion. This interlocutory appeal followed. *See id.* § 51.014(a)(5), (8).

## ANALYSIS

In two issues, the TPS Fund asserts that the trial court erred by denying its plea to the jurisdiction and request for attorneys' fees. We first address the jurisdictional issue.

Sovereign immunity protects the State of Texas and its agencies from suit and liability, while governmental immunity provides similar protections to the State's political subdivisions. *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019). The Division does not dispute that the TPS Fund is a political subdivision of the State for immunity purposes. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d320, 326 (Tex. 2006) (concluding in property-loss insurance case "that the Fund's 'nature, purposes and powers' demonstrate legislative intent that it exist as a distinct governmental entity entitled to assert immunity in its own right for the performance of a governmental function"). Governmental immunity therefore protects the TPS Fund from suit and liability unless the Legislature has waived the TPS Fund's immunity. *See Chambers-Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 344.

The Legislature may waive immunity by statute. *Id.* (citing *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853-54 (Tex. 2002)). If the Legislature elects to waive immunity by statute, it must do so by clear and unambiguous language. Tex. Gov't Code § 311.034; *Chambers-Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 344.

Governmental immunity from suit defeats a trial court's jurisdiction. *Ben-Bolt Palito Blanco CISD*, 212 S.W.3d at 323. Whether a trial court has jurisdiction is a question of law

that we review de novo. *Id.* Therefore, we review de novo the issue of the trial court's ruling on the TPS Fund's plea to the jurisdiction and summary-judgment motion raising the issue of the TPS Fund's immunity from the Division's imposition of administrative penalties. *See Chambers-Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 345.

The TPS Fund focuses its argument on the Texas Legislature's enactment of SB 2551 in 2019. SB 2551 added to Texas Labor Code Section 504.053(e) language expressly waiving political subdivisions' governmental immunity "for sanctions, administrative penalties, and other remedies authorized by Chapter 415 [the section of the Workers' Compensation Act governing administrative violations]." The parties do not contend that this language is ambiguous, and we agree that it is a clear and unambiguous waiver of political subdivisions' governmental immunity for administrative penalties. The parties join issue on whether this unambiguous language represents a change in the existing law. The TPS Fund contends that the Legislature added this language to waive immunity for administrative penalties for violations occurring after June 10, 2019 (the effective date of SB 2551), while the Division contends that the addition of the waiver language was merely a codification or clarification of the existing law.

The construction of a statute is a question of law that we review de novo. *Atmos Energy Corp. v. Cities of Allen*, 353 S.W.3d 156, 160 (Tex. 2011). When construing a statute, our task is to give effect to the Legislature's expressed intent. *Id.* Thus, to determine whether the added language constitutes a waiver of immunity only for violations occurring after June 10, 2019, or is a codification of existing law, we may consider the object sought to be obtained; the circumstances under which the statute was enacted; the legislative history; prior law, including common law; and the consequences of a particular construction. *See* Tex. Gov't Code § 311.023(1)-(5) (establishing nonexclusive list of matters courts may consider to aid "[i]n

6

construing a statute, whether or not the statute is considered ambiguous on its face"); *Atmos Energy*, 353 S.W.3d at 160; *Cities of Austin, Dallas, Ft. Worth & Hereford v. Southwestern Bell Tel. Co.*, 92 S.W.3d 434, 442 (Tex. 2002). In addition, we avoid "construing a statutory provision in isolation from the rest of the statute; we should consider the act as a whole, and not just single phrases, clauses, or sentences." *Cities of Austin, Dallas*, 92 S.W.3d at 442.

Viewing SB 2551 as a whole demonstrates that the Act's overarching purpose was to clarify the law and change the claim process governing first responders' workers' compensation claims for death or disability from cancer. SB 2551, titled "Liability, Payment, and Benefits for Certain Workers' Compensation Claims," amended the Government Code to specifically identify the types of cancer that firefighters or emergency medical technicians are rebuttably presumed to have developed from their job if they regularly responded to calls involving fires or firefighting or regularly responded to an event involving the documented release of radiation or a known or suspected carcinogen while the person was employed as a firefighter or emergency medical technician. *See* SB 2551, § 1 (codified at Tex. Gov't Code § 607.055(b)) (replacing prior definition of work-related cancers with list of specific types), § 2 (codified at Tex. Gov't Code § 607.058(a)-(c)) (amending rebuttable-presumption standard). SB 2551 further added a provision allowing a political subdivision or a pool of political subdivisions that self-insures to establish an account for the payment of death benefits and lifetime-income benefits and promulgating guidelines for establishing such an account. *See id.*, § 7 (codified at Tex. Lab. Code § 504.074).

The Act also changed the process for the workers' compensation insurance carrier to investigate compensability in these presumptive cases, allowing the carrier more than the normal fifteen-day deadline to pay or dispute if certain conditions are met. *Compare* Tex. Lab. Code § 409.021(a), *with* SB 2551, § 3 (adding Subsection (a-3) to Tex. Lab. Code § 409.021). SB 2551

7

added language to the existing provision concerning a carrier's refusal to pay benefits to specify that "[a]n insurance carrier has not committed an administrative violation under Section 409.021 if the carrier has sent notice to the employee as required by Subsection (d) of this section or Section 409.021(a-3)." SB 2551, § 4 (codified at Tex. Lab. Code § 409.022(d-1)). Moreover, SB 2551 added language to the existing provision governing the Division's assessment of administrative penalties to enumerate specific considerations that the Commissioner shall consider when "determining whether to assess an administrative penalty involving a claim in which the insurance carrier provided notice under Section 409.021(a-3)." *See id.*, § 5 (codified at Tex. Lab. Code § 415.021(c-2)(1)-(3)). Finally, SB 2551 included the provision at issue here, amending the existing language in Texas Labor Code Section 504.053 as follows (amended language in boldface type):

> (e)    Nothing in this chapter waives sovereign immunity or creates a new cause of action, except that a political subdivision that self-insures either individually or collectively is liable for**:**
>
>     **(1)  sanctions, administrative penalties, and other remedies authorized under Chapter 415;**
>
>     **(2)  attorney's fees as provided by Section 408.221(c); and**
>
>     **(3)**  attorney's fees as provided by Section 417.003.

*Id.* § 6 (codified at Tex. Lab. Code § 504.053(e)).

The Act stated that the Government Code sections identifying the types of cancer to which the rebuttable presumption applies and containing the amendments to the rebuttable-presumption standard applied only to claims filed after the Act's effective date, and it further stated that Texas Labor Code Section 504.053(e)(1) and (2) applied only to administrative violations that

8

occurred after the effective date of the Act. *Id.* §§ 8, 10. Furthermore, the Act specified that claims filed and administrative violations that occurred before the effective date are governed by prior applicable law. *Id.* Thus, the Act's language specifying that claims filed and administrative violations that occurred before the effective date are governed by the law in effect on the date of the claim or violation supports our conclusion that immunity for administrative penalties was waived before SB 2551 went into effect—otherwise there would have been no need for the Legislature to specify that administrative violations before the date of the Act were governed by the law in effect before the Act. In other words, the Legislature directed that the Commission could not go back and seek administrative penalties under the new statutory scheme for carriers' handling of cancer claims that were filed before the effective date of the Act, not that the Commission could for the first time seek penalties from self-insured political subdivisions.

In addition, SB 2551's legislative history indicates that the Legislature intended that its amendment to Section 504.053 codify existing law, explaining that Section 6 of SB 2551:

> (e) *Makes a nonsubstantive change.* Provides that nothing in this chapter (Workers' Compensation Insurance Coverage For Employees of Political Subdivisions) waives sovereign immunity or creates a new cause of action, except that a political subdivision that self-insures either individually or collectively is liable for:
>
> (1) sanctions, administrative penalties, and other remedies authorized under Chapter 415 (Administrative Violations);
>
> (2) attorney's fees as provided by Section 408.221(c) (relating to providing that an insurance carrier that seeks judicial review of a certain final decision of the appeals panel is liable for reasonable and necessary attorney's fees incurred by the claimant as a result of the insurance carrier's appeal if the claimant prevails on an issue on which judicial review is sought by the insurance carrier in accordance with the limitation of issues); and
>
> (3) creates this subdivision from existing text and makes no further changes.

9

Texas Senate Research Center, Bill Analysis, Tex. S.B. 2551, 86th Leg., R.S. (2019) (emphasis added); *see also* Tex. Gov't Code § 311.023(3) (allowing courts to consider legislative history when construing statutes); *Ben Bolt Palito Blanco CISD*, 212 S.W.3d at 327 (relying on legislative history when construing scope of Legislature's unambiguous waiver of local governmental entities' immunity from suit for enforcement of contracts and determining that Fund was not excluded from immunity waiver and thus it was subject to suit in insurance-coverage dispute with Fund participant).

Consequently, viewed in the context of the rest of the Act and the circumstances of its enactment, we conclude that the Legislature added the new language to Section 504.053(e) to codify existing law establishing that political subdivisions that self-insure—the carriers for many of the State's first responders—are liable for sanctions, administrative penalties, and other Chapter 415 remedies, as well as attorneys' fees, and to clarify that they would be liable under the new process for cancer claims only for administrative violations that occurred after the effective date of the Act.

Construing the provision at issue as a codification of existing law is consistent with the relevant common law and with the structure of the Workers' Compensation Act as a whole. The Legislature enacted SB 2551 in 2019. Almost two decades earlier, this Court determined that political subdivisions that self-insure under the Workers' Compensation Act are subject to administrative penalties assessed by the Division. *Texas Workers' Comp. Comm'n v. City of Eagle Pass/Tex. Mun. League Workers' Comp. Joint Ins. Fund*, 14 S.W.3d 801, 806 (Tex. App.—Austin 2000, pet. denied).

In reaching this holding, we first considered whether political subdivisions enjoyed sovereign immunity from state regulatory authority and concluded that they do not. The Workers'

10

Compensation Commission (now the Division) argued in *Eagle Pass* that "because municipalities and other political subdivisions of the State exist under the authority of the State and are subject to the State's regulatory authority, such entities do not enjoy sovereign immunity *from state regulatory authority*." *Id.* at 803 (emphasis added). We agreed, reasoning that a political subdivision's immunity is derived from the State's immunity and so may act as a shield against actions brought by private parties but not against actions brought by the State exercising its regulatory authority over a political subdivision.[3] *Id.* at 804.

Although we concluded that the workers' compensation insurance fund in *Eagle Pass* did not have independent sovereign immunity from the State, we also analyzed the Workers' Compensation Act in its entirety to address the *Eagle Pass* fund's argument that even if sovereign immunity did not protect it from state regulation, Labor Code Section 415.021, which authorizes the State to assess administrative penalties, does not empower it to assess penalties against political subdivisions. *See Eagle Pass*, 14 S.W.3d at 804-06; *see also* Tex. Lab. Code § 415.021 (authorizing commissioner to assess administrative penalty against "a person who commits an administrative violation" as defined by the Texas Workers' Compensation Act). As an initial matter, we concluded that the Code Construction Act's definition of "person," which includes

---

[3] We note that the reasoning in *Eagle Pass* was based on a narrower argument than a similar argument regarding the derivative nature of political subdivisions' immunity that the Texas Supreme Court has since considered and rejected in a different context. *See Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019) (noting that Texas Supreme Court had previously declined to adopt State's argument in negligence suit that municipality had no immunity against State "because the City's immunity is derived from the State," citing *City of Galveston v. State*, 217 S.W.3d 466, 473 (Tex. 2007), and that State did not ask supreme court to reconsider it in instant case where State pursued money damages against navigation district). As discussed in more detail below, in *City of Galveston*, the Texas Supreme Court cited *Eagle Pass* with approval as a case in which the State was allowed to seek money damages from a political subdivision because "a statute unambiguously rendered cities liable for workers' compensation penalties." 217 S.W.3d at 471 & n.33.

"government or governmental subdivision or agency" is the applicable definition, and thus, Section 415.021 authorizes penalties against a political subdivision. *See Eagle Pass*, 14 S.W.3d at 804-05 (citing Tex. Gov't Code § 311.005(2) (defining "person")).

We then explained that the Texas Workers' Compensation Commission (now the Division) is authorized to monitor insurance carriers to determine if they are in compliance with the Workers' Compensation Act.[4] *Id.* at 802 (citing Tex. Lab. Code §§ 414.001-.007 [now *id.* §§ 414.002-.007]; 28 Tex. Admin. Code §§ 180.1–.8 (1999)). We further noted that the definition of "insurance carrier" includes political subdivisions that self-insure. *See Eagle Pass*, 14 S.W.3d at 802-03 (citing Tex. Lab. Code § 401.011(27)(C) [now codified at *id.* § 401.011(27)(D)]). Relying on the unambiguous language in the Labor Code, we summarized the applicable provisions as follows:

> The Workers' Compensation Act specifically requires political subdivisions to provide workers' compensation benefits to their employees. *See* Tex. Lab. Code Ann. § 504.011. If a subdivision chooses to provide such benefits through self-insurance, then the subdivision falls under the Act's definition of "insurance carrier," which expressly includes "a governmental entity that self-insures, either individually or collectively." *Id.* § 401.011(27)(C) [now codified as *id.* § 401.011(27)(D)]. Section 409.023 of the Act defines when an insurance carrier commits an administrative violation . . . . *See id.* § 409.023 [additional provisions now codified at *id.* §§ 415.002, .0035, .021]. Section 415.022 of the Act specifies the amount of administrative penalties that can be assessed for each class of an administrative violation. *See id.* § 415.022 (West 1996) [since repealed; *see id.* § 415.021 (providing for commissioner's assessment of administrative penalties)]. Read in its entirety, the Act clearly subjects political subdivisions to administrative penalties.

---

[4] In 2005, the Texas Legislature made adjustments to the workers' compensation system that included abolishing the Texas Workers' Compensation Commission and transferring its duties to the Division. *See generally* Act of May 29, 2005, 79th Leg., R.S., ch. 265, 2005 Tex. Gen. Laws 469, 476 (H.B. 7).

*Id.* at 806. Therefore, we concluded that "[t]he plain meaning of the statutory text and the structure of the Act as a whole support the conclusion that political subdivisions and municipalities are subject to administrative penalties under the Workers' Compensation Act." *Id.* Accordingly, we rejected the "appellees' argument that the Commission lacks the statutory authority to impose penalties against them, and we resolve[d] any conflict in favor of the Commission." *Id.* In other words, we held that Labor Code Section 415.021 unambiguously "subjects political subdivisions to administrative penalties" assessed by the Division. *Id.*

No case, either from our Court or from the Texas Supreme Court, has directly overruled our holding in *Eagle Pass*. In fact, in *City of Galveston*, the Texas Supreme Court cited *Eagle Pass* as an example of a case in which the State was allowed to seek money damages from a political subdivision because "a statute unambiguously rendered cities liable for workers' compensation penalties." 217 S.W.3d at 471 & n.33 (citing *Eagle Pass*, 14 S.W.3d at 806; Tex. Lab. Code § 415.021; Tex. Gov't Code § 311.005(2)). Nevertheless, the TPS Fund argues that our holding in *Eagle Pass* is undercut by later decisions of the Texas Supreme Court that it characterizes as holding that the State cannot seek claims for fees, penalties, and costs from political subdivisions because those are claims for retroactive money damages that are barred by political subdivisions' governmental immunity. We disagree. The three cases relied on by the TPS Fund are all distinguishable from *Eagle Pass* because none of them involve a state agency exercising its regulatory authority granted by an unambiguous statute over a political subdivision. *See Chambers-Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 347-348 (concluding that Parks and Wildlife Code did not authorize State to seek retrospective monetary damages against navigation district based on State's claim that Parks and Wildlife Department, not navigation district, had sole power to decide who could cultivate oysters in disputed area); *Rolling Plains Groundwater*

13

*Conservation Dist. v. City of Aspermont*, 353 S.W.3d 756, 760 (Tex. 2011) (per curiam) (holding that although Water Code did not unambiguously authorize suit for or assessment of penalties by one political subdivision against another, conservation district could seek declaratory relief from city but not retroactive money damages consisting of past-due fees, penalties, and costs); *City of Galveston*, 217 S.W.3d at 474 (concluding that absent clear and unambiguous consent from Legislature, State could not sue home-rule city for damages for negligence resulting in damage to State property).

The TPS Fund also argues that *Eagle Pass* is not controlling because our analysis was based in part upon the Code Construction Act's definition of a "person," which includes a governmental subdivision, but the case was decided before the enactment of Texas Government Code Section 311.034 in 2001. Section 311.034 provides as follows:

> In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. In a statute, the use of "person," as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity *unless the context of the statute indicates no other reasonable construction.* Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.

(Emphasis added.) We disagree that Section 311.034 negates our reliance in *Eagle Pass* on Section 311.005's definition of "person." Our analysis of the Workers' Compensation Act in its entirety led to our conclusion that the statute unambiguously supports a waiver of immunity and provides the Division with authority to impose administrative penalties. We did not rely solely on the definition of "person" to conclude that the Legislature intended to waive political subdivisions' governmental immunity—we concluded that the context of the statute indicated no other

14

reasonable construction, given the Workers' Compensation Act's specific requirement that political subdivisions provide workers' compensation benefits to their employees, and its inclusion of self-insured subdivisions in the Act's definition of "insurance carrier."

Finally, the TPS Fund contends that two Texas Supreme Court cases have held that the 2005 amendment to Texas Labor Code Chapter 504 (the Political Subdivisions Law), which added Section 504.053(e)'s original language stating that "[n]othing in this chapter waives sovereign immunity or creates a new cause of action," so "muddled the issue" of immunity that we cannot conclude that the waiver of its immunity for administrative penalties is clear and unambiguous. *See Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 59 (Tex. 2011) (holding court could no longer conclude that Political Subdivisions Law waived political subdivisions' immunity for retaliatory-discharge claims under Chapter 451 after addition of Section 504.053(e)'s broadly worded no-waiver provision); *see also Manbeck v. Austin Indep. Sch. Dist.*, 381 S.W.3d 528, 530 (Tex. 2012) (per curiam) (holding that inclusion of fee-shifting provision in list of adopted provisions set out in Political Subdivisions Law did not amount to waiver of governmental immunity from such fees). We disagree that the holdings in these two cases abrogate our prior holding in *Eagle Pass* or require us to hold that *Eagle Pass* has been superseded by changes to Section 504.053. In both *Manbeck* and *Norman*, the Texas Supreme Court was considering whether the political subdivisions' immunity had been waived for damages or attorneys' fees claims by their employees, not for the regulatory action by the Division that is at issue here. In both cases, the primary arguments for the waiver of immunity were that the provisions at issue had been included in Section 504.002's list of provisions from the general Workers' Compensation Act laws that are included in the Political Subdivisions Law. *See Manbeck*, 381 S.W.3d at 530-32 (holding that although fee-shifting provision had been included in list of adopted provisions, new

15

no-waiver provision made Political Subdivisions Law too internally inconsistent to constitute unambiguous immunity waiver); *Norman*, 342 S.W.3d at 57-59 (holding that inclusion in list of adopted provisions and election-of-remedies provision were not enough to constitute unambiguous immunity waiver in light of new no-waiver provision).

In contrast, in *Eagle Pass*, as discussed at length above, our Court analyzed the entirety of the Workers' Compensation Act and its interaction with the Political Subdivisions Law to reach its conclusion that political subdivisions' immunity is waived for regulatory action by the Division. When the Legislature amended the Political Subdivisions Law in 2005 as part of the larger overhaul of the workers' compensation system, it added Section 504.053 to require self-insuring political subdivisions to provide workers' compensation medical benefits in the manner provided by the section, and as part of that requirement to provide medical benefits, stated that nothing waived sovereign immunity or created a new cause of action. In the larger context of the Workers' Compensation Act, as described in *Eagle Pass*, we do not agree that this no-waiver provision abrogates our conclusion that political subdivisions' immunity is waived for regulatory action by the Division. Accordingly, we conclude that the 2019 amendment to Section 504.053(e) represents a codification of prior common law. *See* Tex. Gov't Code § 311.023(4) (permitting courts to consider prior law when construing statutes).

Therefore, we hold that the TPS Fund's governmental immunity is waived for the administrative penalties imposed by the Division. We overrule the TPS Fund's first issue.

Because we have held that the TPS Fund's governmental immunity is waived for the administrative penalties, we cannot conclude that the trial court abused its discretion by refusing to award the TPS Fund attorneys' fees for defending against a frivolous regulatory action.

*See* Tex. Civ. Prac. & Rem. Code § 105.005. Accordingly, we overrule the TPS Fund's second issue.

## CONCLUSION

Having held that the TPS Fund's governmental immunity is waived under the Workers' Compensation Act for the administrative penalties imposed by the Division, we affirm the trial court's order denying the Fund's plea to the jurisdiction and summary-judgment motion.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed

Filed:   October 31, 2023

17